33 F.3d 34
 1994-2 Trade Cases P 70,693, RICO Bus.Disp.Guide 8620
 CUBIC CORPORATION, a Delaware Corporation, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania
Corporation; Continental Insurance Company, a New Hampshire
Corporation; United States Fidelity & Guaranty Company, a
Maryland Corporation; Hartford Insurance Company, an
Indiana Corporation, Defendants-Appellees.
 No. 93-55671.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 5, 1994*.
Decided Aug. 10, 1994.
 
 Scott A. Johnson, and Clyde C. Greco, Jr., Greco & Traficante, San Diego, CA, for plaintiff-appellant.
 Randall Gustafson, Lincoln & Gustafson, San Diego, CA, for defendant-appellee Ins. Co. of North America.
 Gerald P. Schneeweis, and Lawrence E. Picone, Morris, Polich & Purdy, San Diego, CA, for defendant-appellee Continental Ins. Co.
 Susan E. Firtch, Clark J. Burnham, Larson & Burnham, Oakland, CA, Charles R. Grebing, Douglas J. Simpson, Wingert, Grebing, Anello & Brubaker, San Diego, CA, for defendant-appellee U.S. Fidelity & Guar. Co.
 Kelley K. Beck, Timothy A. Gonzales, Hawkins, Schnabel, Lindahl & Beck, Los Angeles, CA, for defendant-appellee Hartford Ins. Co.
 Appeal from the United States District Court for the Southern District of California.
 Before: D.W. NELSON and NOONAN, Circuit Judges, and KING**, District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 Cubic Corporation (Cubic) brought suit against the Insurance Company of North America, Continental Insurance Company, United States Fidelity & Guaranty Company, and Hartford Insurance Company (the Insurers) seeking a declaratory judgment and damages for tortious breach of insurance contracts. Cubic contended that the Insurers should investigate, defend and reimburse the costs of suits arising out of Cubic's bribery of high officials in the Defense Department.
 
 
 2
 The district court dismissed for failure to state a claim. We affirm.
 
 FACTS
 
 3
 Cubic entered into contracts providing general liability insurance as follows:
 
 
 4
 with Insurance Company of North America, March 1, 1983-March 1, 1984;
 
 
 5
 with Continental Insurance Company, March 1, 1984-December 20, 1986;with United States Fidelity & Guaranty Company, December 20, 1985-March 1, 1986;
 
 
 6
 with Hartford Insurance Company, March 1, 1986-March 1, 1988.
 
 
 7
 The Broad Form Comprehensive Liability Endorsement of the Insurers provided that the company would pay all sums that Cubic became legally obligated to pay "as damages because of personal injury or advertising injury." With immaterial differences each policy defined advertising injury to mean "injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan." Each policy, save that with Hartford, also provided that it did not apply "to personal injury or advertising injury arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured."
 
 
 8
 On December 27, 1991 Cubic was sued in the United States District Court for the Eastern District of Virginia by Kollsman, a division of Sequa Corporation. The complaint alleged that the plaintiff had been injured in the award of contracts by the United States Air Force because of bribes paid by Cubic's wholly owned subsidiary, Cubic Defense Systems. In particular, the complaint noted that, in response to federal criminal charges regarding criminal activity in the award of defense contracts, guilty pleas had been entered by William M. Galvin, a consultant to defense industry contractors, acting as an agent for Cubic; by Victor D. Cohen, deputy assistant secretary for tactical warfare systems in the office of the assistant secretary of the Air Force for acquisition; by Colvin Clay "Sam" Wellborn, the CEO of Cubic Defense and a senior vice president of Cubic; and by Cubic Defense Systems itself. In particular, citing the criminal information to which Wellborn and Cubic Defense Systems had pleaded guilty, the complaint stated that between November 1983 and June 1988 Cubic had furnished $328,580, all or part of which had been paid to Cohen. The complaint also alleged that in response to these bribes Cohen had provided Cubic and Wellborn with confidential information relating to the award of the contract for the Advanced Tactical Air Reconnaissance System.
 
 
 9
 The Kollsman complaint charged Cubic in Count 1 with violation of the Robinson-Patman Act; in Count 2 with violation of the Sherman Antitrust Act; in Count 3 with violation of RICO, 18 U.S.C. Sec. 1961(4); in Count 4 with conspiracy to violate RICO, 18 U.S.C. Sec. 1962(c); in Count 5 with fraud; in Count 6 with unjust enrichment; in Count 7 with intentional interference with contractual arrangements; in Count 8 with intentional interference with prospective contractual arrangements; in Count 9 with civil conspiracy to defraud the United States; and in Count 10 with conspiracy to harm Kollsman and his business. Kollsman asked for $10 million in damages.
 
 
 10
 Applied Data Technology, Inc. (ADT) joined the suit against Cubic on April 15, 1992. The gravamen of its action was "the bribery conspiracy." ADT sought damages in Count 1 for violation of the Sherman Antitrust Act; in Counts 2 and 3 for violation of the Robinson-Patman Act; in Count 4 for intentional interference with prospective contractual relations; in Count 5 for civil conspiracy to defraud the United States; in Count 6 for unfair competition in violation of the Lanham Act, 15 U.S.C. Sec. 1125(a); in Count 7 for unfair competition in violation of California common law and California Business and Professional Code Secs. 17200, et seq.
 
 
 11
 By letters dated April 29, 1992 and June 4, 1992 Cubic notified the Insurers of the suits and requested an investigation and defense of the claims. The Insurers refused to provide the requested defense, to investigate the claims or to reimburse Cubic for the costs of the defense. On June 26, 1992 Cubic, without admitting liability, entered into a settlement with Kollsman and ADT.
 
 PROCEEDINGS
 
 12
 On August 31, 1992 Cubic filed the present suit against the Insurers. The defendants moved to dismiss, and the district court denied the motion. The defendants renewed the motion in light of our decision in Standard Fire Ins. Co. v. Peoples Church of Fresno, 985 F.2d 446 (9th Cir.1993), construing the decision of the Supreme Court of California in Bank of the West v. Superior Court, 2 Cal.4th 1254, 833 P.2d 545, 10 Cal.Rptr.2d 538 (1992). The district court granted the motion to dismiss.
 
 
 13
 As to ADT's suit for unfair competition, Cubic's complaint against three of the Insurers--Insurance Company of North America, Continental Insurance Company and United States Fidelity & Guaranty Company--was dismissed because the policies issued by them had lapsed before ADT came into existence on April 29, 1988.
 
 ANALYSIS
 
 14
 In Bank of the West, the Supreme Court of California held that a comprehensive general liability policy covering advertising injury only extends to unfair competition as a common law tort--a tort "generally thought to be synonymous with the act of 'passing off' one's goods as those of another." 2 Cal.4th at 1263, 833 P.2d 545, 10 Cal.Rptr.2d 538. The court left open the possibility that the tort might include acts analogous to "passing off." Id. The court ruled explicitly that the insurance did not cover unfair business practices under the California statute, and that an insurer had no duty to defend an insured charged with unfair business practices. Id. at 1272, 833 P.2d 545, 10 Cal.Rptr.2d 538. In Standard Fire, we applied Bank of the West and held that "advertising injury" in a comprehensive general liability policy imposed no duty on the insurer as to a suit against the insured alleging securities fraud, RICO violations, fraud, conspiracy, negligent misrepresentation, negligence, and gross negligence. Standard Fire, 985 F.2d at 448-51. Under our own precedent, interpreting controlling California law, there is no room for a claim that insurance of advertising injury imposes on an insurer a duty to defend or reimburse the settlement of a suit based on the criminal bribery undertaken by the insured.
 
 
 15
 Precedent is decisive. We add the following:
 
 
 16
 1. The explicit language of three of the policies covering Cubic excludes coverage for actions taken in violation of a penal statute.
 
 
 17
 2. It would make nonsense of the policies' enumeration of the kinds of acts constituting unfair competition if a totally different kind of act could be read in as included under the rubric of unfair competition.
 
 
 18
 3. It would be absurd to suppose that advertising includes promotion of the product by bribery.
 
 
 19
 4. The strong policy of the State of California is to deny the possibility of a criminal wrongdoer's insuring the liability arising from its crimes. Bank of the West, 2 Cal.4th at 1269, 833 P.2d 545, 10 Cal.Rptr.2d 538. No more pernicious insurance practice can be imagined than permitting defense contractors to carry insurance protecting them if they commit bribery of the Defense Department and are discovered. Cubic could not insure criminal conduct or expect its insurance to cover defense of claims based on criminal conduct.
 
 
 20
 It is also clear that the Insurers who issued policies covering a period when ADT was not in existence have no liability for coverage or defense of the ADT suit.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation