985 F.2d 446
 STANDARD FIRE INSURANCE COMPANY and Aetna Casualty & Surety
Company, Inc., a Connecticut corporation,
Plaintiffs-Appellants,
v.
PEOPLES CHURCH OF FRESNO, a California corporation,
Defendant-Appellee.
 No. 90-16213.
 United States Court of Appeals,
Ninth Circuit.
 Argued Dec. 6, 1991.
Submission deferred Dec. 27, 1991.
Resubmitted: Jan. 15, 1993.
Decided Jan. 28, 1993.
 
 George E. Murphy, Bolling, Walter & Gawthrop, Sacramento, CA, for plaintiffs-appellants.
 John Enscoe, Landels, Ripley & Diamond, San Francisco, CA, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before: PREGERSON, CANBY, and RYMER, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Standard Fire Insurance Company and Aetna Casualty and Surety Company (collectively referred to as "insurers" or "appellants") brought an action against their insured, Peoples Church of Fresno, seeking a declaration that they have no duty to defend or indemnify Peoples Church in two underlying actions and that they are entitled to reimbursement of defense costs already paid. On cross-motions for summary judgment, the district court ruled in favor of Peoples Church. The district court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We reverse and remand to the district court for consideration of the reimbursement issue.
 
 BACKGROUND
 
 2
 The underlying actions stem from a plan to build a residential development for senior citizens. The project was undertaken by Peoples Foundation of Fresno, a subsidiary company of Peoples Church, and was financed through development bonds issued by the City of Fresno. When the project failed, the bondholders sued Peoples Church among others alleging that Peoples Church negligently misrepresented the viability of the project to investors.[1] Specifically, they alleged securities fraud, RICO, fraud, conspiracy, negligent misrepresentation, negligence, and gross negligence.
 
 
 3
 Standard Fire Insurance Company is the primary carrier and Aetna Casualty and Surety Company is the excess carrier for Peoples Church. The comprehensive general liability ("CGL") policies issued to Peoples Church provide coverage for damages stemming from "advertising injury" which is defined as "any injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of ... unfair competition...."[2] The insurers reserved "the right and duty to defend any suit against the insured seeking damages on account of such injury...." Peoples Church tendered defense of the actions to their insurers, who initially undertook the defense. The primary issues in this case are whether the wrongful activities of Peoples Church in advertising the bonds come within the definition of "unfair competition" in the context of the insurance policies and whether the insurers have a duty to defend Peoples Church in the underlying actions. Because this case is in federal court on diversity jurisdiction, we apply the law of California in resolving these questions.
 
 DISCUSSION
 I. Definition of Unfair Competition
 
 4
 The insurers argued in the district court and here on appeal that "unfair competition" in their insurance contracts referred to the common law business tort of unfair competition and not to conduct prohibited by unfair business practice statutes such as Cal.Bus. & Prof.Code § 17200 ("section 17200").[3] In making this assertion, they also contend that the CGL policies only cover claims for damages and not for restitutionary relief which they allege the bondholders seek.
 
 
 5
 The district court agreed with Peoples Church that the term "unfair competition" was ambiguous and could reasonably be construed to cover the allegations of deceptive, untrue, and fraudulent advertising made against it in the underlying lawsuits. Accordingly, the district court resolved the ambiguity in favor of Peoples Church. See Producers Dairy Delivery Co. v. Sentry Insurance Co., 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986) (ambiguous terms in insurance policies construed in favor of insured); Gray v. Zurich Insurance Co., 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (doubts resolved against the insurer). The district court concluded that the phrase "unfair competition" has taken on the broader meaning as codified in section 17200. As the district court noted, this provision is not limited to anti-competitive business practices but also protects the public from unlawful, deceptive or unfair practices. Barquis v. Merchants Collections Ass'n, 7 Cal.3d 94, 109-12, 101 Cal.Rptr. 745, 496 P.2d 817 (1972) (interpreting former Cal.Civ.Code § 3369).
 
 
 6
 We deferred submission of this case to await the California Supreme Court's decision in Bank of the West v. Superior Court, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). That decision addresses the question of the scope of coverage afforded by a CGL insurance policy for claims of "unfair competition" arising in the course of the insured's advertising activities. Our result here is dictated by that decision.
 
 
 7
 In Bank of the West, the California Supreme Court held that the term "unfair competition" in the context of a standard CGL policy was not ambiguous and did not "cover claims for advertising injury that arose under the Unfair Business Practices Act." Bank of the West, 2 Cal.4th at 1258, 10 Cal.Rptr.2d 538, 833 P.2d 545. See section 17200. See also Chatton v. National Union Fire Ins. Co. of Pittsburgh, PA, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, 329-330 (1992). The Court emphasized that the restitutionary relief available under section 17203 of the Act does not constitute "damages" within the meaning of a CGL policy. Bank of the West, 2 Cal.4th at 1265-72, 10 Cal.Rptr.2d 538, 833 P.2d 545. "[I]nsurable damages do not include costs incurred in disgorging money that has been wrongfully acquired...." Id. at 1268, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Court reasoned that to allow a wrongdoer to pass on the cost of disgorgement to an insurer would vitiate the incentive for obeying the law. Id. at 1269, 10 Cal.Rptr.2d 538, 833 P.2d 545. Cf. Allstate Ins. Co. v. Hansten, 765 F.Supp. 614, 616 (N.D.Cal.1991) (holding that Cal.Civ.Code § 1668 precludes insurance coverage as a matter of law for the insured's negligent misrepresentation); Cal.Ins.Code § 533.5 (no insurance coverage or duty to defend in actions brought under Unfair Business Practices Act).
 
 
 8
 The California Supreme Court also observed that the majority of courts have concluded that "unfair competition" as it relates to advertising injury in CGL policies refers to the common law tort--"passing off" one's goods as those of another. Bank of the West, 2 Cal.4th at 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545. As the Court further explained, "this conclusion substantially limits the scope of coverage." Id.
 
 
 9
 On appeal, Peoples Church presents two positions. First, it argues that the term "unfair competition" is ambiguous and can reasonably be interpreted to include activities falling within the ambit of section 17200. This claim is foreclosed by the decision in Bank of the West. See also Chatton, 13 Cal.Rptr.2d at 330. Second, Peoples Church contends that the claim of negligent misrepresentation is a claim for "damages" that is covered by the "unfair competition" provision in the CGL policy. The question, then, is whether "unfair competition" in the context of a CGL policy encompasses actions for negligent misrepresentation that arise in the course of advertising activities.
 
 
 10
 While not explicitly addressing the issue, the California Supreme Court in Bank of the West strongly suggests that "unfair competition" in the advertising injury provision of CGL policies is limited to the common law tort which includes competitive injury as an element. See Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 209, 197 Cal.Rptr. 783, 673 P.2d 660 (1983) (competitive injury is an element of the common law tort of unfair competition); Barquis, 7 Cal.3d at 109-10, 101 Cal.Rptr. 745, 496 P.2d 817 (same). The Court refers to common law unfair competition as the backdrop for its holding that claims under section 17200 are not covered by CGL policies. See Bank of the West, 2 Cal.4th at 1263-67, 1271-72 n. 5, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Bank of the West decision also cites with approval the majority view that coverage for advertising injury arising out of unfair competition is limited to common law unfair competition claims. Id. at 1262-64, 10 Cal.Rptr.2d 538, 833 P.2d 545. Read as a whole, the Bank of the West opinion indicates that California law follows the majority rule that "unfair competition" in advertising injury coverage refers to the common law tort. We therefore reject the argument of Peoples Church that Bank of the West stands for the broad proposition that "unfair competition" refers to any civil wrong that can support an award of conventional damages. See id. at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("Read in this context, the term 'unfair competition' can only refer to a civil wrong that can support an award of damages.").
 
 
 11
 Both underlying actions against Peoples Church allege damages for the tort of negligent misrepresentation. However, we can see no way that the claim for negligent misrepresentation can fall within the definition of the common law tort of unfair competition. Nor can we see any way that the Pinto complaint can be amended to state a claim of unfair competition absent competitive injury to the plaintiffs.
 
 
 12
 Relying in part on dictionary definitions, Peoples Church argues that "unfair competition" includes acts that harm the public as well as acts that harm competitors. The Bank of the West decision addressed this argument when it stated that the definition of a term cannot be viewed in the abstract, but must be looked at in context. Id. at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("court must interpret the language in context, with regard to its intended function in the policy"). Within the context of the standard CGL policy, "unfair competition" can only refer to the common law tort.
 
 
 13
 The term "unfair competition" is nestled within a group of torts in the advertising injury provision which all involve disparagement or appropriation of another's name, style, identity, or other forms of representation of products.[4] Plainly, none of this coverage involves misrepresentation, negligent or otherwise, of the unique attributes of one's own product.[5] Advertising injury within this context is injury inflicted on a competitor and not simply on a customer. Additionally, to include claims of negligent misrepresentation within the scope of unfair competition coverage would be to expand that coverage to include the insured's business activities in general. Such a result does not comport with the context of the CGL policy and does not support an objectively reasonable expectation of coverage. See id.
 
 
 14
 Peoples Church also relies on American Philatelic Society v. Claibourne, 3 Cal.2d 689, 698, 46 P.2d 135 (1935), to support its argument that injured consumers can prosecute the common law claim for unfair competition. We find this argument unpersuasive. First, in American Philatelic, injured consumers brought an action for injunctive relief; they did not sue to recover damages for the common law tort of unfair competition. Second, the case nonetheless involved a situation of competitive injury. The plaintiffs were competing vendors, and the wrongful conduct involved an attempt to palm off stamps as rare originals. Id. at 692, 46 P.2d 135.
 
 
 15
 In light of the Bank of the West decision, the district court erred by concluding that the phrase "unfair competition" was ambiguous and by construing it in favor of the insured. The facts alleged in the complaints in the underlying actions do not and cannot constitute a claim for the common law tort of unfair competition.
 
 II. Duty to Defend
 
 16
 The duty to indemnify is not necessarily coextensive with the duty to defend. Gray, 65 Cal.2d at 271-72, 54 Cal.Rptr. 104, 419 P.2d 168. Under California law, an insurer has a duty to defend its insured against claims which create a potential for indemnity. Gray, 65 Cal.2d at 276-77, 54 Cal.Rptr. 104, 419 P.2d 168. "[T]he carrier must defend a suit which potentially seeks damages within the coverage of the policy...." Gray, 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168. It thus follows that where there is no potential for coverage, there is no duty to defend. Jaffe v. Cranford Ins. Co., 168 Cal.App.3d 930, 934, 214 Cal.Rptr. 567 (1985).
 
 
 17
 We look to the factual allegations in the complaint and to other facts known to the insurer to determine whether a potential for coverage exists, and thereby a duty to defend. Gray, 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168. The complaints in the underlying actions fail to allege facts constituting a competitive injury for which coverage would exist. Nor does Peoples Church offer other facts known to its insurers that would bring the underlying lawsuits within the realm of coverage for "unfair competition."The duty to defend also exists when language in an insurance policy leads the insured to reasonably expect a defense. AIM Insurance Co. v. Culcasi, 229 Cal.App.3d 209, 218, 280 Cal.Rptr. 766 (1991); Gray, 65 Cal.2d at 267-75, 54 Cal.Rptr. 104, 419 P.2d 168. As discussed above, Peoples Church had no objectively reasonable expectation of coverage based on the language in question. Moreover, Peoples Church does not point to any other language in the policy that would give rise to a reasonable expectation of a defense. We therefore conclude that appellants have no duty to continue to defend Peoples Church in the underlying investor lawsuit.
 
 
 18
 Our result here is bolstered by the California Supreme Court's disapproval of two district court decisions[6] finding a duty to defend in cases of liability brought under section 17200. The Court found that these two decisions were "against the clear weight of authority both generally and in the Ninth Circuit." Bank of the West, 2 Cal.4th at 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545. Because we hold similarly that the claims of negligent misrepresentation in the underlying lawsuits are not covered by the "unfair competition" term in the advertising injury clause of the standard CGL policy, we conclude that the district court erred in finding a duty to defend.
 
 III. Reimbursement of Defense Costs
 
 19
 The insurers have already paid out defense costs in both the Central Bank and Pinto actions. They seek reimbursement of these costs. Because the district court did not address this issue, finding a duty to defend, we remand to the district court for resolution of this issue.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 [1]
 There are two underlying actions. In the first action, Central Bank of Oakland, as trustee for the bond financing, filed suit on behalf of the bondholders. This action, known as the "Central Bank" action was dismissed because the Central Bank lacked standing to represent the bondholders. A second action, the "Pinto" case was filed a few months later and is still pending in state court. Appellants have expended funds in defense of both actions
 
 
 [2]
 Although Standard Fire and Aetna have separate policies with Peoples Church, in all pertinent parts the policies are identical and will be discussed together here
 
 
 [3]
 Cal.Bus. & Prof.Code § 17200 provides in pertinent part: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising...."
 
 
 [4]
 The other torts in the advertising injury provision of the CGL policies are libel, slander, defamation, violation of right of privacy, piracy, misappropriation of idea, and infringement of copyright, title or slogan
 
 
 [5]
 Our holding here is not intended to preclude, for instance, coverage for claims of negligent misrepresentation of one's own product as that of another
 
 
 [6]
 See American States Insurance Co. v. Canyon Creek, 786 F.Supp. 821, 827-28 (N.D.Cal.1991); Keating v. National Union Fire Ins. Co., 754 F.Supp. 1431, 1435-37, 1441 (C.D.Cal.1990)