[No. B075843. Second Dist., Div. Four. May 9, 1995.]

A-MARK FINANCIAL CORPORATION et al., Plaintiffs and Appellants,
v.
CIGNA PROPERTY AND CASUALTY COMPANIES—INSURANCE
COMPANY OF NORTH AMERICA et al., Defendants and Respondents.

## COUNSEL

Malley, Koffman & Associates, Gregory Koffman, Hawley, Troxell, Ennis & Hawley and John F. Kurtz, Jr., for Plaintiffs and Appellants.

Hornberger & Criswell, Ann M. Ghazarians, James L. Wellman, David Berry, Booth, Mitchell & Strange, Robert F. Keehn, Lisa Tinsley O'Hara, Bruce Trent, Bruce Davis, White and Williams and Lawrence Bistany for Defendants and Respondents.

## OPINION

**WOODS (A. M.), P. J.**—In *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545], the Supreme Court held that an insurance policy which by its terms protected the insured against claims for "damages" caused by "unfair competition" arising from "advertising activity" did not cover claims for unfair competition brought under California's Unfair Business Practices Act, which does not permit recovery of damages. ██ The issue raised by this appeal is whether the holding in *Bank of the West* applies where the claims arose under Idaho's version of the Unfair Business Practices Act and the Commodity Exchange Act, both of which contain a damage remedy. We conclude that it does.

The procedural history of this case is as follows: Appellants, A-Mark Financial Corporation, and its subsidiaries Spiral Metal Company and FI Holding, Inc. (collectively A-Mark) brought an action for breach of insurance contract, breach of the duty of good faith, and declaratory relief against its former insurers: (1) Insurance Company of North America (INA), incorrectly designated as CIGNA Property and Casualty Companies—Insurance Company of North America; (2) Pacific Indemnity Company, incorrectly designated as Chubb Group of Insurance Companies—Pacific Indemnity Company, and (3) Continental Casualty Company and National Fire Insurance Company of Hartford (CNA), incorrectly designated as CNA Insurance Companies—Continental Casualty Company. The complaint alleges that defendants wrongfully failed to provide a defense to A-Mark in a series of lawsuits arising out of its dealing with an Idaho resident and involving Idaho's Consumer Protection Act (Idaho Code, § 48-601 et seq.), and the Commodity Exchange Act (7 U.S.C. § 1 et seq.).

To resolve the coverage issue, A-Mark and Pacific Indemnity brought cross-motions for summary judgment. The trial court granted Pacific Indemnity's motion, "adopt[ing] a narrow interpretation of 'unfair competition,' and conclud[ing] that the causal connection between the advertising practice and the general public is too remote to give rise to coverage." The court based its decision on the Supreme Court's holding in *Bank of the West*, *supra*, 2 Cal.4th 1254, judgment was entered in favor of defendant Pacific Indemnity and, following that, INA's and CNA's motions for judgment on

the pleadings were granted on the same grounds. A-Mark appeals, contending *Bank of the West* is not applicable here, where the issue is not payment of claims, but duty to defend, and the underlying claims at least potentially involve damages. We reject these contentions and affirm the judgment.[1]

The undisputed facts are that A-Mark, a California corporation, is in the business of wholesaling precious metals to dealers. Between April 1982 and December 1986, A-Mark made hundreds of sales to Keith Bybee, a retail dealer doing business in Boise, Idaho. Bybee's purchases were made both on his own behalf and for resale to his customers. At some point, Bybee was offered the opportunity to purchase on margin, for 10 or 20 percent down, and thereafter made many such purchases over the remaining course of the parties' relationship. Whenever Bybee made margin purchases, A-Mark kept possession of the metals as collateral until the full purchase price was paid. During this same period, Bybee purchased silver and other metals on behalf of his customers, which were also kept in his name at A-Mark. Apparently he advised his customers that their silver was being stored at A-Mark for safekeeping, but not that it was under his name and subject to his debts.

The relationship began to unravel in 1983 when the market price of silver declined. A-Mark imposed a series of margin calls on Bybee. After having exhausted his financial resources and his ability to borrow, Bybee liquidated all the precious metals held in his name by A-Mark. Bybee sold the metals back to A-Mark to repay his personal debt, even though some of the metals had been purchased—and fully paid for—by his customers. Bybee then used the money recovered to continue to speculate in the commodities market, eventually losing it all. In 1987, he lost his business, filed for bankruptcy, and was convicted of theft.

I

A series of lawsuits was filed against A-Mark in Idaho arising out of its relationship with Bybee. The first, Krommenhoek v. A-Mark Precious Metals Inc. (U.S. Bankr. Ct., D. Idaho, No. 87-0033), was brought by the trustee of Bybee's bankruptcy estate. The complaint alleged, among other things, that Bybee, "as agent for A-Mark and with A-Mark's express, implied, or apparent authority, would impliedly and expressly represent to public customers that their precious metals were being physically stored at A-Mark." The actions of A-Mark, and those of its "agent" Bybee, were alleged to be "unfair methods and practices" under Idaho's Consumer Protection Act,

---

[1] We do not reach the issue of whether or not a causal connection between the advertising practice and the injury exists.

which is similar to California's Unfair Business Practices Act. Although the complaint appears to seek only restitutionary recovery, there is no dispute that, unlike California's Unfair Business Practices Act, damages are available under the Idaho statute. (Idaho Code, § 48-608.)

The margin sales to Bybee were also said to be "unlawful, unregistered futures contracts" or "leverage transactions" under the Commodity Exchange Act. The act provides for recovery of damages caused by unlawful sale of futures contracts and leverage transactions (7 U.S.C. § 25(a)), and the complaint included a claim for damages under this cause of action.

Prior to trial in the Krommenhoek action, A-Mark obtained dismissal of all causes of action except for count 1, involving a few thousand dollars of silver paid for but not received by Bybee, and count 7, the alleged violation of the Commodity Exchange Act. At trial, plaintiff sought to prove that A-Mark had violated the act by, among other things, marketing its sale of precious metals through margin accounts to the general public. In this regard, brochures and news releases prepared by A-Mark and describing its operations and products were referenced. Although the brochures were delivered solely to dealers, some may have been transmitted to Bybee's customers—indeed, some appear to have been designed for that purpose with a place for the dealer to stamp its name and address before passing them along. Plaintiff also attempted to demonstrate that A-Mark's salesmen advertised to the general public when they held conversations with Bybee on speaker phones, discussing such things as the price of silver or the merits of purchasing silver, which were overheard by Bybee's customers. The advertising brochures were used by plaintiff in Krommenhoek in a different context as well, to demonstrate "standardization" and "right to offset," two other indicia of an unlawful futures contract or leverage transaction under the Commodity Exchange Act. Plaintiff sought as "revisionary damages" all monies paid to A-Mark for the silver and other precious metals purchased by Bybee. A-Mark obtained a defense verdict, which was upheld on appeal. However, A-Mark spent several hundred thousand dollars on its defense.

The second case, State of Idaho v. A-Mark Precious Metals, Inc. (U. S. Dist. Ct., D. Idaho, No. 89-1055), alleged, based on similar facts, the same violations of the Commodity Exchange Act, and also alleged violations of state and federal securities laws. This case was resolved as a result of the ruling in the Krommenhoek lawsuit that no violation of the Commodities Exchange Act occurred.

The third case, Roundy v. A-Mark Precious Metals Inc. (U.S. Dist.Ct., D. Idaho, No. Civ 90-0101), was a class action brought on behalf of those who

lost their money and silver as a result of their dealings with Bybee. Like the other complainants, the Roundy plaintiffs alleged that A-Mark was collusively involved in Bybee's scheme to store his customer's precious metal under his own name and use it for his own purposes, or at least was aware of Bybee's practice in this regard. The claims included violation of the Idaho Consumer Protection Act and the Commodity Exchange Act. The complaint sought to "treat any purchase or sale agreement incident [to violations of the Idaho Consumer Protection Act] as void and to have returned all money or property obtained by A-Mark through its trading partner Bybee together with costs and attorneys fees and punitive damages." It sought damages for the Commodity Exchange Act violations. As far as the record discloses, that action is still pending.

## II

There is no dispute that the respondent insurance companies, INA, Pacific Indemnity, and CNA, had issued policies to A-Mark which were in effect during at least some portion of the relevant period. Although the precise wording differs in numerous respects, all of the policies cover sums the insured is obligated to pay as "damages" because of "advertising injury," which is defined to include "unfair competition" or injury arising out of "unfair competition."[2] All the policies obligated the insurers to defend A-Mark against such claims, even if they proved "groundless, false, or fraudulent."

---

[2]INA's policy stated in relevant part: "The Company will pay on behalf of the Insured, except as hereafter provided, all sums which the Insured shall become legally obligated to pay as damages because of: A-Personal Injury . . . . The company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury . . . even if any of the allegations of the suit are groundless, false or fraudulent . . . ." "Personal injury" includes "advertising offense," which is defined as "The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; piracy; unfair competition; infringement of copyright, title or slogan."

The relevant provision of the Pacific Indemnity policy provided: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent . . . ." "Advertising injury" is defined to mean "1. libel, slander or defamation, 2. any infringement of copyright or title or of slogan, 3. piracy or unfair competition or idea misappropriation under an implied contract, 4. any invasion of right of privacy, committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of the insured's advertising activities."

In the CNA Insurance policies, CNA agreed to "pay on behalf of the *Insured* all sums which the *Insured* shall become legally obligated to pay as damages because of . . . *Advertising Injury* to which this insurance applies, sustained by any person or organization

In *Bank of the West, supra,* 2 Cal.4th 1254, the Supreme Court considered the scope of coverage afforded by a provision in a comprehensive general liability (CGL) policy which, like the policies at issue here, covered "advertising injury" and defined the term to include injuries from "unfair competition" arising out of "advertising activity." The insured had been sued under California's Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.) by consumers for making loans to automobile purchasers at exorbitant interest rates without disclosing the terms. (2 Cal.4th at pp. 1258-1259.) The loans were not advertised directly to the public, but were made available only through insurance agents who in each instance procured a power of attorney to apply for the loan in the consumer's name. (*Id.* at p. 1259.) The insured argued that the term "unfair competition" as defined in the policy was ambiguous and should be given the broad statutory definition contained in section 17200, to include all unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising. (2 Cal.4th at p. 1260.) The defendant insurance companies maintained that the term referred only to the narrow definition available under common law, essentially injury to a competitor due to passing off of his goods. (*Id.* at pp. 1260-1261.)

The Supreme Court held that "the policy term 'unfair competition' does not refer to conduct prohibited by the Unfair Business Practices Act." (*Bank of the West, supra,* 2 Cal.4th at p. 1262.) In reaching this conclusion, the court described the decision of the appellate court that the term was ambiguous and could refer to statutory unfair competition, as "stand[ing] virtually alone among published opinions in holding that the CGL policy's standard language covers claims under a state statute prohibiting unfair business practices." (*Id.* at pp. 1262-1263.) Citing a number of state and federal opinions, the court noted that "[t]he authority against coverage for such claims is overwhelming." (*Id.* at p. 1263.) The court then looked at the meaning of the term in the context of the parties' agreement. "The policy does not purport to cover 'unfair competition' in the abstract; instead, it covers '*damages*' for 'advertising injury' caused by 'unfair competition.' Read in this context, the term 'unfair competition' can only refer to a civil wrong that can support an award of damages." (*Id.* at p. 1265, italics in the original.) Because the California Unfair Business Practices Act "does not

and arising out of the conduct of the *Named Insured's* business, within the *Policy Territory,* and the Company shall have the right and duty to defend any suit against the *Insured* seeking damages on account of such injury even if any of the allegations are groundless, false or fraudulent . . . ." Under the policies, "*Advertising Injury* means injury arising out of an offense committed during the policy period occurring in the course of the *Named Insured's* advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan."

authorize an award of damages, and a definition of 'unfair competition' that cannot support a claim for damages cannot reflect the objectively reasonable expectations of the insured," the court concluded "that the policy term 'unfair competition' does not refer to conduct that violates the Unfair Business Practices Act." (*Id.* at p. 1272.)

As "an alternative, independent basis" for its decision, the court held that the injury "must have a causal connection with the insured's 'advertising activities' before there can be coverage." (*Bank of the West, supra,* 2 Cal.4th at pp. 1273-1277.) Applying that rule to the case before it, the court held: "[I]t is evident that the [underlying] plaintiffs' claims were not so connected with the [insured's] advertising activities. The only claims in the [underlying] complaint that might be described as claims for 'unfair competition,' and which survived summary adjudication, were claims for the restoration of amounts allegedly acquired through violations of the Unfair Business Practices Act. (§ 17203.) These claims, which were based on the inadequacy of disclosures to consumers and the illegality of the terms of the loans, do not have a sufficient causal connection with advertisements directed solely to insurance agents." (*Id.* at p. 1277.)

*Bank of the West* was followed in *Chatton* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846 [13 Cal.Rptr.2d 318], where it was similarly argued that coverage should be provided based on the expansive definition of "unfair competition" contained in the California Unfair Business Practices Act. The court disagreed, relying on *Bank of the West* for the proposition that " 'unfair competition' as used in the policy language defining advertising injury refers to the common law tort of unfair competition rather than to the conduct prohibited under the Unfair Business Practices Act." (10 Cal.App.4th at p. 863.) "Since, in [*Chatton*], respondents sued the [insured company's] officers and directors for deceptive business practices (fraud, negligent misrepresentations, breach of fiduciary duty and negligence) violating the Unfair Business Practices Act rather than for the common law tort of competitive rivalry, under *Bank of the West* they were not entitled to coverage under the advertising liability provisions of the policy." (*Id.* at p. 865.)

The same result was reached in the related case of *McLaughlin* v. *National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132 [29 Cal.Rptr.2d 559], involving the same statutory claims, wherein the court reiterated: "In *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1263-64, 1272 . . . our Supreme Court held that the term 'unfair competition' in the standard advertising liability endorsement does not embrace conduct prohibited under

the [Unfair Business Practices] Act. Rather, it refers only to the common law tort of unfair competition, which is generally synonymous with 'passing off' one's goods as those of another. As we then pointed out in *Chatton*, investors sued the officers and directors of [the insured company] for deceptive business practices violating the Act, not for the common law tort of competitive rivalry and, thus, they were not entitled to coverage under the advertising liability endorsement of the CGL." (23 Cal.App.4th at pp. 1150-1151.)

Despite earlier holdings in *Chatton* and *McLaughlin*, *supra*, in *American Cyanamid Co.* v. *American Home Assurance Co.* (1994) 30 Cal.App.4th 969 [35 Cal.Rptr.2d 920], the court observed that some question remained as to whether the definition of "unfair competition" in the context of a policy covering advertising injury should be confined to the common law tort. As the court put it, "in *Bank of the West* the Supreme Court left unanswered the question whether coverage for unfair competition is narrowly limited to the common law tort of unfair competition or whether it extends to other anticompetitive business practices as long as damages are available." (30 Cal.App.4th at p. 976, fn. 3.) In *American Cyanamid*, the underlying lawsuit against the insured was brought by a competitor, so the court had no cause to decide the issue. (*Id.* at p. 977.) But the court noted that "courts of other jurisdictions have held there is no duty to defend an underlying lawsuit for unfair competition absent the element of competition or rivalry between the parties." (*Ibid.*)

The Ninth Circuit recognized and dealt with the issue in *Standard Fire Ins. Co.* v. *Peoples Church of Fresno* (9th Cir. 1993) 985 F.2d 446 and *Keating* v. *National Union Fire Ins.* (9th Cir. 1993) 995 F.2d 154. In *Standard Fire*, claims of unfair competition were made against the insured based on deceptive, untrue, and fraudulent advertising to consumers, and its insurers brought suit against it seeking a declaration that they had no duty to defend or indemnify. The insured attempted to distinguish *Bank of the West*, contending that "the claim of negligent misrepresentation is a claim for 'damages' that is covered by the 'unfair competition' provision in the CGL policy." (985 F.2d at p. 449.) The court decided that nevertheless the claim was not covered as a matter of California law, noting that "[w]hile not explicitly addressing the issue, the California Supreme Court in *Bank of the West* strongly suggests that 'unfair competition' in the advertising injury provision of CGL policies is limited to the common law tort which includes competitive injury as an element." (*Id.* at p. 449.) Because the Supreme Court in *Bank of the West* referred to the common law unfair competition "as the backdrop for its holding that claims under section 17200 are not covered

by CGL policies," and cited with approval "the majority view that coverage for advertising injury arising out of unfair competition is limited to common law unfair competition claims," the Ninth Circuit concluded: "Read as a whole, the *Bank of the West* opinion indicates that California law follows the majority rule that 'unfair competition' in advertising injury coverage refers to the common law tort." (*Id.* at p. 449.)

The same decision was reached by the Ninth Circuit in *Keating* v. *National Union Fire Ins.*, *supra*, 995 F.2d 154, in which the claims consisted of securities fraud and related activities pursuant to which damages were available to claimants. The insured pointed out that "the California Supreme Court in *Bank of the West* did not explicitly confine coverage under the policy term to the tort of common-law unfair competition." (995 F.2d at p. 155.) The court agreed there was some question as to "[w]hether the California Court would restrict liability under such policies to the exact confines of the common-law tort of unfair competition" (*ibid.*), but remained convinced that *Bank of the West* undermined the insured's position. "The *Bank of the West* opinion rejected expansive dictionary definitions of 'unfair competition' that generally encompassed harms to the public in addition to harms to competitors. . . . [T]he Court's opinion leaves no doubt that investors' claims of the type in issue in this case do not qualify as 'damages' from 'advertising injury' caused by 'unfair competition,' as those terms appear in the context of National Union's policies. *Some* substantial component of competitive injury is required." (*Id.* at p. 155, italics in original.)

We agree with that reasoning. The injury from the alleged unfair competition in the underlying Idaho litigation against A-Mark was to the consuming public, not to A-Mark's competitors. The acts complained of would be considered "unfair competition" only under a broad, statutory definition of the term, not under common law. Although in *Bank of the West*, the Supreme Court had no call to determine whether the existence of damages as a remedy in a statutory unfair competition claim would justify a different result, the court's reasoning in that case leads us to conclude that it does not. In *Bank of the West*, the court explicitly stated "the policy term 'unfair competition' does not refer to conduct prohibited by the Unfair Business Practices Act." (*Bank of the West, supra*, 2 Cal.4th at p. 1262.) It rejected expansive definitions of unfair competition and cited with approval those cases, comprising the majority, holding that "unfair competition" in the context of a CGL policy refers to the common law tort. (*Id.* at p. 1263.) It described the court of appeals decision as "stand[ing] virtually alone among published opinions in holding that the CGL policy's standard language covers claims under a state statute prohibiting unfair business practices." (*Id.*

at pp. 1262-1263.) It referred to those California federal courts which had found a duty to defend claims brought under the Unfair Business Practices Act as "against the clear weight of authority both generally and in the Ninth Circuit." (*Id.* at p. 1263.) The court's intention to limit coverage to common law unfair competition claims seems clear. We, therefore, reject appellant's invitation to carve out an exception where the potential for recovery of damages exists.

III

■ Appellant A-Mark would also distinguish *Bank of the West* on the ground that it involved a duty to indemnify, while, here, we are concerned with a duty to defend. ■ It is true that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) " '[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' " (*Id.* at p. 295, quoting *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267-277 [54 Cal.Rptr. 104, 419 P.2d 168], italics in original.) In addition, "[a]n insurer's duty to defend must be analyzed and determined on the basis of any *potential* liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense." (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276], italics in original.) " 'Indeed, the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is *not* covered.' " (*California Ins. Guarantee Assn.* v. *Wood* (1990) 217 Cal.App.3d 944, 948 [266 Cal.Rptr. 250]; *CNA Casualty of California* v. *Seaboard Surety Co.*, *supra*, 176 Cal.App.3d 598, 606.)[3]

■ Until the Supreme Court's decision in *Bank of the West*, there was authority to suggest that a statutory unfair competition claim was covered by advertising injury policies. (See, e.g., *American States Ins. Co.* v. *Canyon Creek* (N.D.Cal. 1991) 786 F.Supp. 821, 827-828; *Keating* v. *National Union Fire Ins.* (C.D.Cal. 1990) 754 F.Supp. 1431, 1435-1437, 1441, revd. (9th Cir. 1993) 995 F.2d 154.) This leads us to question whether, in some sense,

---

[3]Thus, the fact that it was ultimately established in the underlying Idaho litigation that A-Mark did not advertise its products and services to the general public is not, as respondents suggest, dispositive since plaintiffs claimed, and sought to prove, that it did.

coverage potentially existed here, at least until the *Bank of the West* decision was rendered. In other words, does the existence of an unresolved, but purely legal, question create a "potential for indemnity" within the Supreme Court's meaning in *Gray* and *Montrose*?

We begin by noting that there is nothing in either of those decisions to suggest that a duty to defend exists pending resolution of a novel legal issue or an issue of policy interpretation. To the contrary, the Supreme Court stated in *Gray* that it "look[ed] to the nature and kind of risk covered by the policy as a limitation upon the duty to defend . . . ." (*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at p. 275.) In *Montrose*, the court specifically stated that ". . . it is unclear whether an uncertainty regarding a purely *legal* question of policy interpretation is the sort of 'potential' envisioned by *Gray*. The argument is not before us in the present case, and we therefore do not address it." (*Montrose Chemical Corp.* v. *Superior Court*, *supra*, 6 Cal.4th at p. 303, fn. 5, italics in original.)

We also note that there have been numerous instances where absence of coverage and duty to defend turned on a novel interpretation of the law or the policy.[4] Moreover, those courts which have addressed the issue have uniformly concluded that no duty to defend exists. (See, e.g., *American Motorists Ins. Co.* v. *Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1354 [24 Cal.Rptr.2d 106]; *State Farm Mut. Auto. Ins. Co.* v. *Longden* (1987) 197 Cal.App.3d 226, 233-234 [242 Cal.Rptr. 726]; accord, *Aetna Casualty & Surety Co.* v. *Superior Court* (1993) 19 Cal.App.4th 320, 327 [23 Cal.Rptr.2d 442] ["[I]f there is no potential liability for covered damages as a matter of law, there cannot be the potential for indemnification, nor can there be a duty to defend."].)

In *State Farm*, for example, coverage turned on the interpretation by the court of a policy term. The insured argued that State Farm had a duty to defend because "the term 'accident' was ambiguous, giving rise to potential liability." (*State Farm Mut. Auto. Ins. Co.* v. *Longden*, *supra*, 197 Cal.App.3d at p. 233.) The court disagreed, holding that "[a]ppellants misapprehend the notion of 'potential liability.' Potential liability deals with whether the insurer owes coverage to the insured based upon the facts known to the

---

[4]See, e.g., *Transamerica Ins. Co.* v. *Superior Court* (1994) 29 Cal.App.4th 1705 [35 Cal.Rptr.2d 259]; *Devin* v. *United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149 [8 Cal.Rptr.2d 263]; *Hallmark Ins. Co.* v. *Superior Court* (1988) 201 Cal.App.3d 1014 [247 Cal.Rptr. 638]; *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532 [226 Cal.Rptr. 435].

insurer or facts pleaded in the complaint, even if false. . . . [¶] Here, any potential for liability did not arise from disputed facts, but hinged on resolution of a legal question, i.e., whether the undisputed facts constituted an 'accident' during the policy period. We know of no case suggesting that an insurer has a duty to defend where the only potential for liability turns on resolution of a legal question." (*Ibid.*)

The precise question we address here was faced in *McLaughlin* v. *National Union Fire Ins. Co., supra,* where investors sued the officers and directors of a company covered by a standard advertising injury endorsement for deceptive business practices under the California Unfair Business Practices statute. Plaintiffs argued there was "potential" coverage because "until the Supreme Court rendered *Bank of the West* in 1992, state and federal courts were split on whether the advertising injury endorsement insured against the type of business practices prohibited under the [Unfair Business Practices] Act." (*McLaughlin* v. *National Union Fire Ins. Co., supra,* 23 Cal.App.4th at p. 1151.) The court found no duty to defend " 'where the only potential for liability turns on resolution of a legal question. . . .' " (*Ibid.,* quoting *State Farm Mut. Auto. Ins. Co.* v. *Longden, supra,* 197 Cal.App.3d at p. 233.)

This issue was also addressed in *Keating* and *Standard Fire Ins. Co., supra.* In both cases the Ninth Circuit concluded that the holding in *Bank of the West* foreclosed even the potential for coverage under CGL policies covering advertising injury. (*Keating* v. *National Union Fire Ins., supra,* 995 F.2d at p. 156; *Standard Fire Ins. Co.* v. *Peoples Church of Fresno, supra,* 985 F.2d at pp. 450-451.)

We agree with the authorities cited above that a "potential for indemnity" cannot be based on an unresolved dispute concerning a purely legal question or question of policy interpretation when the question is resolved favorably to the insurer. To hold otherwise would put the insurer in an untenable position. Rarely has a legal issue arising in the context of a coverage dispute been resolved with absolute finality. Thus, the insurer would be required to provide a defense every time a demand was made, no matter how implausible the theory on which it was based. We said in *Amato* v. *Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784 [23 Cal.Rptr.2d 73], that the insurer has the option to deny a defense request "and take its chance that the trier of fact in an action alleging bad faith breach of the contractual duty to defend will agree that no defense was owed [citation]." (18 Cal.App.4th at p. 1792.) This is precisely what the respondent insurance companies have done here. The trial court's ruling granting judgment to respondents was correct.

The judgment is affirmed, respondents to recover costs.

Epstein, J., and Vogel (C. S.), J., concurred.

Appellants' petition for review by the Supreme Court was denied July 27, 1995.