**Robert D. REESE, Plaintiff–counter–defendant–3rd–party–defendant–Appellant,**

v.

**The TRAVELERS INSURANCE COMPA-NY, a Connecticut corporation, Defen-dant–counter–claimant–3rd–party–plain-tiff–Appellee,**

**and**

**The TRAVELERS INSURANCE COM-PANY, Third–party–defendant–cross–claimant–Appellee,**

v.

**Joseph R. TOMLINSON; R. Stephen Somogye; Gary Mrazek, Cross–defendants–Appellants.**

No. 96–16507.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1997.

Decided Nov. 12, 1997.

not address the issue of retroactive annulment in that case. *Id.* at 573.

Russell G. VanRozeboom, Wild, Carter, Tipton & Oliver, Fresno, California, for plaintiff-third-party-defendant-appellant.

John Leland Williams, Sonnenschein, Nath & Rosenthal, San Francisco, California, for third-party-defendant-counter-claimant-appellee.

Before: FLETCHER, BOOCHEVER and REINHARDT, Circuit Judges.

Opinion by Judge FLETCHER; Concurrence by Judge BOOCHEVER.

FLETCHER, Circuit Judge.

Plaintiff John Chrisman filed a complaint against appellants Robert Reese, Gary Mrazek, Joseph Tomlinson and Stephen Somogye, all former directors and officers or directors or officers of Keystone Metal Co., a metals reclamation operation. The complaint alleged environmental contamination, including groundwater contamination, arising out of the operation of Keystone. Appellant Reese filed a third-party complaint against Keystone's general commercial liability insurer, The Travelers Insurance Company (Travelers), seeking a declaration that Travelers was obligated to defend him in the Chrisman action. Reese also brought claims against Travelers for indemnity, declaratory relief regarding the duty to indemnify, and breach of the implied covenant of good faith and fair dealing. The district court granted summary judgment in favor of Travelers, holding that Travelers had no duty to defend appellants in the underlying action. We have jurisdiction, 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## BACKGROUND

In 1993, John Chrisman commenced an action in federal district court against appellants asserting thirteen state and federal claims arising from environmental contamination by Keystone which allegedly occurred between 1970–1985. Between 1970 and 1985, Keystone rented commercial property in

Bakersfield, California ("the Site") from Chrisman where it operated a metals reclamation facility. Keystone treated scrap materials, generating residual.wastes that were discharged or released into the soil and environment at the Site. The Chrisman complaint alleged that wastes released by the Keystone operations "at the Site, and their migration and threat of migration therefrom, cause and threaten to cause harm to a substantial number of persons and other living things, and to the land, water, and wildlife of California." The complaint went on to state that Keystone is liable to Chrisman for the cost of cleanup and other damages to exceed $1.9 million. It further alleged that the appellants were liable for these damages because they were either executive officers or directors, or both, of Keystone and they participated in Keystone's management.

Travelers issued four comprehensive general liability (CGL) policies to Keystone for the years 1981–1985. The policies promise to defend Keystone and its officers and directors in their capacities as officers and directors or either against "any suit against the insured seeking damages on account of . . . bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . ." The policies define "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

Travelers initially agreed to defend the Chrisman action but reserved its right to withdraw should it conclude that there was no possibility of liability under the policy. After researching the coverage question, Travelers concluded that it had no obligation to defend Keystone or its directors and executives in the Chrisman action. Accordingly, Travelers withdrew its defense.

■■■ Reese filed a third-party complaint against Travelers for indemnity, declaratory relief regarding the duty to defend, declaratory relief regarding the duty to indemnify, and breach of the implied covenant of good faith and fair dealing. Travelers answered Reese's complaint and filed a counterclaim against Reese and the other appellants seeking declaratory relief concerning its duty to defend and indemnify appellants. Reese moved for summary judgment against Travelers, seeking a determination of the issue of Travelers' duty to defend the underlying Chrisman action. The district court denied Reese's motion and *sua sponte* granted summary judgment in favor of Travelers, holding that Travelers had no duty to defend Reese in the Chrisman action because the owned-property exclusion, or alternatively the manifestation trigger test,[1] precluded any possible liability. After the ruling in its favor against appellant Reese, Travelers filed motions for summary judgment against the remaining appellants. The district court granted Travelers' motions on the basis of the owned-property exclusion and certified the judgment under Federal Rule of Civil Procedure 54(b). Appellants timely appealed.

## ANALYSIS

### A. Standard of Review

■■ We review a grant of summary judgment de novo, *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994), as we do a district court's interpretation of

---

1. The manifestation trigger test for coverage provides that the damage must be manifested during the policy period. "Manifestation" is "that point in time when appreciable damage occurs and is or should be known to the insured." *Prudential–LMI Commercial Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 389, 798 P.2d 1230, 1232 (Cal.1990). In *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995) *(Montrose II)*, the California Supreme Court held that the "continuous trigger" of coverage applies to environmental con-

tamination cases. The continuous trigger test provides that while damage occurs continuously throughout a covered period it is covered under the policy even when it is not manifested during that period. Thus, the alternate basis for the district court's ruling against Reese was no longer applicable at the time that the district court granted summary judgment for Travelers against the other appellants. The district court granted summary judgment against the other appellants solely on the basis of the "owned-property" exclusion.

state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

### B. *Duty to Defend*

 It is a well-established precept of insurance law that the duty to defend is broader than the duty to indemnify. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 474, 861 P.2d 1153, 1160 (1993) (en banc) (*Montrose I* ). "An insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured or because the actual judgment is for damages not covered under the policy." *Borg v. Transamerica Ins. Co.,* 47 Cal. App.4th 448, 54 Cal.Rptr.2d 811, 814 (1996).

 To determine whether the insurer owes a duty to defend, the court must compare the allegations of the underlying complaint with the terms of the policy. *Montrose I,* 24 Cal.Rptr.2d at 471, 861 P.2d at 1157. "[W]hen a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered." *Vann v. The Travelers Co.,* 39 Cal.App.4th 1610, 46 Cal. Rptr.2d 617, 619 (1995). "This obligation can be excused only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Lebas Fashion Imports v. ITT Hartford,* 50 Cal.App.4th 548, 59 Cal. Rptr.2d 36, 40 (1996) (quotations omitted).

 At summary judgment stage, the insured must prove the existence of any potential for coverage, while the insurer must establish the absence of any such potential. *Vann,* 46 Cal.Rptr.2d at 619.

In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for the defense. "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Id.* (quoting *Montrose I,* 24 Cal.Rptr.2d at 474, 861 P.2d at 1160). Where the policy provides no potential for coverage, the insurer is under no duty to defend in the underlying action. *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 377–78, 900 P.2d 619, 627 (Cal.1995). Any doubt as to whether there is a duty to defend must be resolved in favor of the insured. *Montrose I,* 24 Cal.Rptr.2d at 474, 861 P.2d at 1160.

Travelers agreed to defend any suit seeking to hold the appellants liable for damages or injuries covered under its policies, even if the suit alleges facts that are ultimately shown to be "groundless, false or fraudulent." *See Waller,* 44 Cal.Rptr.2d at 379, 900 P.2d at 628 ("This duty [to defend], which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify."). According to Travelers, the policies' owned-property and pollution exclusions preclude any possibility of liability under the policies.

### 1. Owned-Property Exclusion

 Travelers argues that extrinsic evidence conclusively establishes that any property damage[2] alleged in the Chrisman complaint occurred on property owned by Keystone[3] and therefore is not covered under the policy. During discovery, Travelers produced evidence demonstrating that the contamination alleged in the underlying complaint was confined to the property under the

---

**2.** Environmental contamination is "property damage" within the meaning of a CGL policy. *See AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 846, 799 P.2d 1253, 1279 (1990).

**3.** The policies' owned-property exclusion provides that the policy does not cover:

property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or property in the care custody or control of the insured or as to which the insured is for any purpose exercising physical control.

control of Keystone and that there was no threat of groundwater contamination. Based on this evidence, the district court agreed that there was no genuine issue of fact concerning the threat of off-site contamination. Therefore, the district court held that the owned-property exclusion in the Travelers CGL policies precludes any possibility of coverage in the underlying action and Travelers has no duty to defend.

■ Travelers' arguments and the ruling of the district court fundamentally misapprehend the relevant inquiry. The question is not whether the allegations of the underlying complaint are meritorious, but rather whether Travelers' policy terms require it to provide a defense against such claims. *See Waller*, 44 Cal.Rptr.2d at 377–78, 900 P.2d at 627 (The duty to defend "is measured by the nature and kinds of risks covered by the policy."). Travelers has a "duty to defend . . . as long as the complaint contains language creating the potential of liability under an insurance policy." *A–Mark Financial Corp. v. CIGNA Prop. and Casualty Co.*, 34 Cal.App.4th 1179, 40 Cal.Rptr.2d 808, 814 (1995) (quotation omitted). "Potential liability deals with whether the insurer owes coverage to the insured based upon the facts known to the insurer or facts pleaded in the complaint, *even if false.*" *Id.*, 40 Cal.Rptr.2d at 815 (quotation omitted). Thus, we must determine whether the underlying complaint alleges a covered claim, not whether the facts alleged in the complaint are true.

The Chrisman complaint alleges that the appellants caused property damage beyond the Site. Specifically, the complaint alleges groundwater contamination, which Travelers concedes is covered property damage not excluded by the owned-property exclusion. Thus, the complaint on its face contains language creating potential liability. Because the Chrisman complaint sets forth a claim covered by the policy, Travelers has a duty to defend appellants in the underlying action. To allow Travelers to avoid its duty to defend Keystone based on its allegation, even if true, that it cannot ultimately be held liable to Chrisman allows it to avoid the contractual duty it assumed to defend Keystone against even groundless, false, or fraudulent suits.

In his concurrence, Judge Boochever argues that had Travelers been able to prove conclusively that it could not be held liable, it had no duty to defend. As he points out, there is language in *Montrose I* to the effect that an insurer has no duty to defend where there is no "potential for liability." 24 Cal. Rptr.2d at 474, 861 P.2d at 1160. However, we believe that when read in context, the *Montrose I* court meant that the insurer would have no duty to defend where undisputed facts showed that as a matter of law there was no potential for liability to defend because there was no potential for coverage. In *Montrose I*, the issue before the court was whether or not the third party's complaint referred to a covered risk. Here, the complaint unambiguously refers to a covered risk.

A case very recently decided by the California Court of Appeals is closely analogous to the case at hand and perhaps makes this point more clearly. *A–H Plating, Inc. v. American Nat'l Fire Ins. Co.*, 57 Cal.App.4th 427, 67 Cal.Rptr.2d 113 (1997). The court cited extensively to *Montrose I* for the proposition that the duty to defend rested entirely upon the existence of the potential for coverage. Then, reviewing an owned property exclusion similar to the one at issue here and the insurer's evidence that there was no groundwater contamination, the court held that,

> an insurer cannot avoid the duty to defend merely by concluding, based on its own investigation, that the insured has done no wrong. . . . [A]merican National's unilateral determination that the third party claims are "groundless, false, or fraudulent" did not relieve it of the duty to provide a defense. Its contrary assertion ignores the distinction between the duty to defend and the duty to indemnify. . . .

*Id.*, 67 Cal.Rptr.2d at 121. Significantly, the court noted as an aside that American National had not proved as a matter of law that there was no groundwater contamination; however, this determination was not a necessary part of the court's holding that American National owed a duty to defend. *Id.*, 67 Cal.Rptr.2d at 121 n. 12.

### 2. Pollution Exclusion

■■■ Travelers argues that the pollution exclusion contained in the CGL policies eliminates any possibility of liability for the underlying action and therefore Travelers has no duty to defend. The pollution exclusion provides that the policy excludes:

> bodily injury or property damage arising out of any commission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant: (i) if such emission, discharge, seepage, release or escape is either *expected or intended* from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable. . . .

(emphasis added). According to Travelers, because the very nature of the Keystone operation was to strip metals, the alleged property damage was both "expected" and "intended" from the standpoint of the insured. Travelers points to evidence in the record demonstrating that the appellants were aware that the Keystone operations caused pollution.

The Chrisman complaint does not specify whether appellants negligently or intentionally caused the pollution. Moreover, the California Supreme Court made clear in *Montrose I* that "the fact that [appellants'] regular business practices involved the disposal of [toxic] wastes [does] not eliminate the possibility that at least some of the property damage might have resulted from accidental causes." 24 Cal.Rptr.2d at 478, 861 P.2d at 1164. Accordingly, Travelers failed to meet its burden of establishing "conclusively" with "undisputed facts, . . . as a matter of law, . . . no potential for liability." *Id.*, 24 Cal.Rptr.2d at 473, 861 P.2d at 1159.

### 3. Bad Faith Claim

■■■ Travelers urges us to affirm the district court's judgment on appellant Reese's claim for breach of the duty of good faith and fair dealing even if we reverse on the issue of duty to defend. The district court granted summary judgment to Travelers only on the issue of duty to defend. The order on this preliminary question effectively resolved all of Reese's other claims. However, the district court never reached the bad faith issue and there is therefore no final judgment on this question.

### CONCLUSION

The underlying complaint alleges claims that create a potential for liability. Accordingly, we reverse the grant of summary judgment for Travelers and grant summary judgment to the appellants on the question of Travelers' duty to defend the underlying action. We remand to the district court for further proceedings on the remaining claims.

REVERSED AND REMANDED.

BOOCHEVER, Circuit Judge, concurring:

I concur in the majority's result, and would agree with its reasoning concerning an insurer's duty to defend were it not for California law to the contrary.

In this action for declaratory relief, if Travelers could have established by undisputed evidence that there was no possibility of groundwater contamination giving rise to damage to property other than that of its insured, California law would hold that there is no duty to defend. In *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 474, 861 P.2d 1153, 1160 (1993), the California Supreme Court, concurring in and quoting the reasoning of the Court of Appeals, stated

> [O]nce the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can conclusively refute that potential. Necessarily, an insurer will be required to defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered. . . . *A carrier remains free to seek declaratory relief if undisputed facts conclusively show, as a matter of law, that there is no potential for liability.*

(Emphasis added.)

Similarly, in *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 377–78, 900 P.2d 619, 627 (1995), the court stated

[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.

Conversely, *where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability.* This is because the duty to defend although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy.

(Citations omitted and emphasis added.)

Thus, if Travelers had established by undisputed evidence that there was no possibility of groundwater contamination so that damage was confined to property owned by the insured, under the law as stated by the California Supreme Court, Travelers would be entitled to a declaratory judgment that it had no duty to defend.

In this case, however, Travelers did not carry its burden to produce undisputed extrinsic evidence that there was no possibility of coverage. A consultant's report Travelers proffered to the district court stated both that further and deeper testing was necessary to determine that metals contamination had not leached to greater depths than the eighteen inches at which the site had been tested, and that it was unclear whether perched groundwater existed on the site, requiring further testing as well. Traveler's extrinsic evidence thus did not eliminate the possibility of groundwater contamination.

Applying the California Supreme Court's holdings in this case, I reach the same conclusion as the majority. Because Travelers did not carry its heavy burden to show by undisputed evidence that there was no possibility of coverage, it has a duty to defend appellants.