EVERETT ASSOCIATES, INC., a California Corporation, dba Living Earth Crafts, and Donald Payne, an individual, Plaintiffs,

v.

TRANSCONTINENTAL INSURANCE COMPANY, a New York corporation, and American National Fire Insurance Company, a New York corporation, Defendants.

No. C–97–4308–SC.

United States District Court, N.D. California.

May 26, 1999.

Daniel J. Lanahan, Thomas Kevin Konicek, Mary P. Derner, Lanahan & Reilley, Santa Rosa, CA, for Everett Associated, Inc., dba Living Earth Crafts and Donald Payne.

Charles A. Lynberg, Hellar Ann Hancock, Timothy Hix, Lynberg & Watkins, Los Angeles, CA, Claire Cortner, Miller, Christerson, McNaboe & Cortner, San Francisco, CA, for Transcontinental Insurance Company.

Steven L. Newton, Chip Cox, Newton, Kastner & Remmel, Mountain View, CA, for American National Fire Insurance Company.

### ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT

CONTI, District Judge.

## I. *INTRODUCTION*

Plaintiffs Everett Associates, Inc. ("Everett") and Donald Payne ("Payne") bring the above-captioned action against Defendant insurance companies Transcontinental Insurance Company ("Transcontinental") and American National Fire Insurance Company ("American") for claims resulting from their alleged unreasonable and bad faith refusals to provide a defense and indemnity in an underlying patent infringement lawsuit.

The present matter comes before the Court on the cross-motions of Defendant Transcontinental and Plaintiffs for summary judgment.[1]

## II. *BACKGROUND*

The underlying patent case, *Clark v. Living Earth Crafts* ("the *Clark* action"), involved a suit by Roland Clark against

---

1. Transcontinental has objected to Plaintiffs' Reply Brief to its Opposition to the Counter Motion, as Local Rule 7–3(d) does not specifically provide for filing a reply under these circumstances. Neither, however, do the rules prohibit it, and it appears to be warranted in this case. The Court in its discretion has granted Plaintiffs leave to file the Reply Brief.

Everett Associates, dba Living Earth Crafts, alleging that Everett advertised, offered to sell, manufactured, and sold portable massage tables that infringed a patent owned by Clark. Everett tendered the defense of this action to Defendant Transcontinental on May 14, 1997. On July 10, 1997, August 22, 1997, and September 9, 1997, Transcontinental denied a duty to defend or indemnify.

Transcontinental and American are liability insurers for Plaintiff Everett. Donald Payne ("Payne") is Everett's owner and Chief Executive Officer. Everett filed this case against Transcontinental for declaratory relief and damages stemming from Transcontinental's alleged bad faith and unreasonable refusal to defend or indemnify the *Clark* action pursuant to Transcontinental policy no. 56819374, a General Commercial Liability policy ("the GCL policy").[2]

Now before the Court is Defendant Transcontinental's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking a judicial declaration that Transcontinental did not owe Plaintiffs the duty to defend or indemnify the *Clark* action. In response, Plaintiffs move the Court for summary judgment against Transcontinental to declare that Transcontinental owed Everett a duty to defend, and Transcontinental breached that duty. In addition, Plaintiffs seek attorneys' fees, expenses, and prejudgment interest incurred in defense of the *Clark* action.

## III. *LEGAL STANDARDS*

### A. *Summary Judgment*

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the non-moving party,

the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Any disagreement about a material issue of fact precludes the use of summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### B. *The Duty to Defend*

It is well-settled law that an insurer must defend any action which potentially seeks damages within the coverage of the policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). The insurer may only be excused from this duty when the third party complaint " '*can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " *Montrose*

---

**2.** Everett later amended its Complaint to add Payne as an individual plaintiff; to add American as a defendant; to add claims against American for its refusal to defend and indemnify Plaintiff in the underlying patent infringement suit; to add claims against both liability insurers related to Payne's alleged emotional and mental distress; and to change the format of the complaint in order to make it more amenable to summary adjudication as to the insurers' duty to defend and breach of that duty.

*Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (quoting *Gray v. Zurich Ins. Co.,* 65 Cal.2d at 276, n. 15, 54 Cal. Rptr. 104, 419 P.2d 168) (italics added by *Montrose* Court). "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot." Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (italics in original).

■ The determination of whether the duty to defend exists is made initially by comparing the allegations in the third party complaint with the terms of the policy, as well as considering extrinsic facts which reveal a possibility that the claim may be covered by the policy. *Id.* at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (citations omitted). For the insurer, the existence of the duty turns upon all facts known at the inception of the third party lawsuit. *Id.* (citations omitted).

■ While the duty to defend is broad, it is not unlimited. The nature and kind of risk covered by the policy defines and limits the duty to defend. *Lebas Fashion Imports of USA, Inc., v. ITT Hartford Ins. Group,* 50 Cal.App.4th 548, 556, 59 Cal. Rptr.2d 36 (1996) (citing *Dyer v. Northbrook Property & Casualty Ins. Co.,* 210 Cal.App.3d 1540, 1547, 259 Cal.Rptr. 298 (1989)). In addition, "a potential for coverage cannot be based on an unresolved legal dispute concerning policy interpretation which is ultimately resolved in favor of the insurer." *Id.* (citing *A–Mark Financial Corp. v. CIGNA Property & Casualty Cos.,* 34 Cal.App.4th 1179, 1192, 40 Cal. Rptr.2d 808 (1995)).

## IV. *DISCUSSION*

### A. *Whether the General Commercial Liability Policy Covers Patent Infringement*

Transcontinental contends that as a matter of law, the GCL policy issued to Everett does not cover claims of patent infringement, and therefore, Transcontinental has no duty to defend or indemnify. Transcontinental claims that it properly denied coverage on the following grounds: 1) patent infringement is not an enumerated advertising activity giving rise to coverage; 2) there is no causal connection between Everett's advertising activities and the alleged patent infringement; and 3) coverage of "offer to sell" patent infringement is barred by the "as damages" clause of the policy.

### (1) *Transcontinental's Argument that Patent Infringement Is Not One of the Enumerated Categories of Advertising Injury*

The Transcontinental GCL policy provides, *inter alia,* coverage for advertising injury caused by an offense committed in the course of advertising the insured's goods, products, or services. The GCL policy defines the term "advertising injury" as an injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

Transcontinental argues that this language unambiguously does *not* cover patent infringement. Plaintiffs disagree, contending that the duty to defend may arise from ambiguities in either the clause providing coverage for "misappropriation of advertising ideas or style of doing business," or "infringement of copyright, title or slogan."

■■ It is well-settled that ambiguities in policy language must be construed in favor of the insured, so long as the insured's offered meaning is not unreasonable. *Producers Dairy Delivery Co., Inc. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986) (citations omitted). "If the insurer uses language which is uncertain, any reasonable doubt will be resolved against it; if the doubt relates to the extent or fact of coverage ... the language will be understood in its most inclusive sense, for the benefit of the insured." *Holz Rubber Co., Inc. v. American Star Ins. Co.*, 14 Cal.3d 45, 56, 59–60, 120 Cal.Rptr. 415, 533 P.2d 1055 (1975).

Whether the policy language can be interpreted to cover patent infringement claims depends on a two-step analysis. First, as the policy does not expressly provide for such coverage, the Court must determine if the language in question is ambiguous. Second, if the language is ambiguous, the Court must look to the objectively reasonable expectations of the insured to determine if the policy could be construed to cover patent infringement claims.

### (a) *Whether the Policy Language is Ambiguous*

■ The California Supreme Court set forth the steps for analyzing claims of ambiguity in insurance policy language in *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992):

> While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.... If contractual language is clear and explicit, it gov-

erns.... On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." ... This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, "the objectively reasonable expectations of the insured." ... Only if this rule does not resolve the ambiguity do we then resolve it against the insurer....

> In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In doing so, the court must interpret the language in context, with regard to its intended function in the policy. *Id.* at 1264–65, 10 Cal.Rptr.2d 538, 833 P.2d 545.

Using the *Bank of the West* criteria, California's Second District Court of Appeal conducted an extensive and detailed analysis of one of the precise phrases alleged to be ambiguous by Plaintiffs—"misappropriation of advertising ideas or style of doing business"[3]—in a similar GCL policy. *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 50 Cal. App.4th 548, 59 Cal.Rptr.2d 36 (1996). This Court finds the *Lebas* analysis instructive. Although the *Lebas* Court was reviewing the misappropriation clause in terms of a claim for trademark infringement, rather than patent infringement, the initial determination pursuant to *Bank of the West* of whether the language is ambiguous is identical.[4]

---

**3.** For convenience, this Court will hereafter refer to this language as "the misappropriation clause."

**4.** The *Lebas* Court noted in dicta that prior cases have determined that patent infringement is generally not covered under the advertising injury provisions of a GCL policy.

*Id.* at 557, 59 Cal.Rptr.2d 36. However, the holdings in those cases were not based upon alleged ambiguity (or lack thereof) in the policy language. Further, as the discussion below will demonstrate, the reasoning behind those decisions is now in question. *See infra* section IV.A(1)(c). Regardless, the initial

Like patent infringement in the case at hand, trademark infringement was not specifically enumerated as an "advertising injury" in the language of the *Lebas* policy. Therefore the Court had to determine whether the misappropriation clause was ambiguous, and could reasonably be construed by the insured to cover trademark infringement absent express use of the term.

The *Lebas* Court first noted that, when interpreting a policy, the court is required to read the disputed terms from the point of view of a layman, and not as they would be analyzed by an attorney or an expert on insurance. *Lebas*, 50 Cal.App.4th at 559, 59 Cal.Rptr.2d 36 (citing *Delgado v. Heritage Life Ins. Co.*, 157 Cal.App.3d 262, 271, 203 Cal.Rptr. 672 (1984); *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 655 (9th Cir.1994); *American Star Ins. Co. v. Insurance Co. of the West*, 232 Cal.App.3d 1320, 1330–31, 284 Cal. Rptr. 45 (1991); and *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 578, 218 Cal.Rptr. 407 (1985)). In accordance with the California Supreme Court's instructions in *Bank of the West*, the *Lebas* Court applied well-settled principles of policy construction and concluded that the policy terms "misappropriation," "advertising idea," and "style of doing business" are indeed ambiguous.[5]  *Id.* at 560, 59 Cal. Rptr.2d 36. In evaluating and applying the ordinary and popular sense of the words in the context of their use in the

policy, the *Lebas* Court concluded that two or more reasonable constructions may be placed on them "without engaging in a strained interpretation." *Id.* at 561, 59 Cal.Rptr.2d 36. Specifically, the Court noted that "it is equally reasonable . . . to ascribe to the term misappropriation the more general meaning of 'to take wrongfully' as it is to limit it to its technical common law sense." *Id.* at 562, 59 Cal. Rptr.2d 36 (citing *Dogloo, Inc. v. Northern Ins. Co. of New York*, 907 F.Supp. 1383, 1388–89 (C.D.Cal.1995)). The Court concluded:

> Given these multiple reasonable meanings and connotations which may be given to the . . . policy language defining one of the advertising injury offenses, we conclude that an ambiguity exists. . . . Applying the analytical approach outlined in *Bank of the West*, we must next attempt to resolve that ambiguity by . . . look[ing] to the objectively reasonable expectations of [the insured]. We do this by examining the language in the context of its apparently intended function in the policy and with due consideration to the circumstances in this case.

*Id.* (citing *Bank of the West*, 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545).

 This Court agrees with the *Lebas* Court that the language of the misappropriation clause is ambiguous and subject to more than one reasonable interpretation.

---

analysis regarding the ambiguity of the policy language remains the same.

5. The *Lebas* Court first tried to determine the parties' mutual intention solely from the words in question. *Id.* at 560, 59 Cal.Rptr.2d 36. As there was no indication that either party intended any technical or special meaning for the words, the Court examined them in " 'their ordinary or popular sense.' " *Id.* (citing *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990)). The Court observed that Webster's Dictionary defines "misappropriate" as "to appropriate dishonestly for one's own use" and "to appropriate wrongly or misapply in use." *Id.* at 560, n. 7, 59 Cal.Rptr.2d 36 (citing Webster's Third New International

Dictionary 1442 (1981) [hereinafter, "Webster's"] ). Webster's defines "idea" as a "presentation of sense, concept, or representation," "an object of a concept," "a conception or standard of any perfection," "a visible representation of a conception," and "a product of reflection or mental concentration: a formulated thought or opinion." *Id.* (citing Webster's at 1122). "Style" is defined as, among other things, "a mode of expressing thought in oral or written language," with examples such as "a manner of expression characteristic of an individual, a period, a school, or other identifiable group" as well as "the manner, tone, or orientation assumed in discourse." *Id.* (citing Webster's at 2271).

Therefore, the Court will now turn to the objectively reasonable expectations of the insured.

### (b) *Whether the Ambiguous Language Could Reasonably Be Construed By the Insured to Cover Claims for Patent Infringement*

In accordance with the *Bank of the West* case, this Court must look to the objectively reasonable expectations of the insured to determine whether the ambiguous policy language could be construed to cover claims for patent infringement. The Transcontinental policy expressly provides coverage for advertising injury claims. The task now before the Court is to determine if the *Clark* action could reasonably be construed to allege an advertising injury.

In a related question, Transcontinental's second argument in support of its denial of coverage is that there is no causal connection between Plaintiff Everett's advertising activities and the alleged patent infringement. This causal connection is unquestionably required by law. *See, e.g., Bank of the West,* 2 Cal.4th 1254, 1275–77, 10 Cal.Rptr.2d 538, 833 P.2d 545; *see also* section IV.A(1)(c) *infra.* The determination of whether this causal connection exists dovetails with the determination as to whether the *Clark* action could reasonably be construed to involve an advertising injury claim. Therefore, the Court will consider those questions together.

### (c) *Transcontinental's Argument That There Is No Causal Connection Between Everett's Advertising Activities and the Claim of Patent Infringement*

■ As noted above, in order to determine that there is potential policy coverage for a patent infringement claim, there must be a causal connection between advertising by the insured and the patent infringement claim. *Bank of the West,* 2 Cal.4th 1254, 1275–77, 10 Cal.Rptr.2d 538, 833 P.2d 545. In fact, it is the absence of this causal connection that has led courts in the past to determine that a claim for patent infringement is not directly enough related to the advertising injury provisions in a GCL policy to invoke the duty to defend. *See, e.g., Bank of the West,* 2 Cal.4th 1254, 1275–77, 10 Cal.Rptr.2d 538, 833 P.2d 545; *Iolab Corp. v. Seaboard Surety Co.,* 15 F.3d 1500, 1506 (9th Cir. 1994); *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 79–80 (N.D.Cal.1989). Defendant Transcontinental argues that in the instant case, as in the cases above, there is an insufficient nexus between Everett's advertising and the patent infringement claims in the *Clark* action to establish a causal connection and invoke the duty to defend under the policy.

However, the patent infringement landscape has been altered since the decisions cited by Transcontinental. In 1994, Congress amended § 271 of the Patent Act to include, for the first time, "offers to sell" infringing products:

> [W]hoever without authority makes, uses, *offers to sell,* or sells any patented invention within the United States ... during the time for the patent therefore, infringes the patent.

35 U.S.C. § 271 (emphasis added). This amendment took effect on January 1, 1996. It was effective at the time Everett allegedly infringed Clark's patent and during the Transcontinental policy period.

In fact, language from the new amendment was used in the complaint against Everett in the *Clark* action. The *Clark* complaint alleged, *inter alia,*

> Defendant [Everett] has *advertised* infringing products throughout the United States ... and has *offered to sell* and has sold products infringing [Clark's patent] in the Central District of California.

Complaint for Infringement of U.S. Letters Patent Number 5,009, 170, ¶ 2 (emphasis added).

■ Plaintiffs argue that the addition of the "offers to sell" language in § 271,

along with claims against Everett in the *Clark* action based upon Everett's advertising of the allegedly infringing products, create a sufficient causal connection between the patent infringement and the advertising injury to invoke Defendant Transcontinental's duty to defend. In addition, the "offers to sell" language creates an objectively reasonable expectation on the part of the insured that the insured could be prosecuted for advertising injury in a claim for patent infringement.

Transcontinental hotly disputes these contentions. However, for two reasons, this Court must agree with Plaintiffs. First, the cases cited by Transcontinental which determine there is no duty to defend patent infringement claims indicate that the very reason those courts found no duty was because the Patent Act did not, at that time, include the "offer to sell" provision that it now contains. Second, the court in the underlying *Clark* action, based upon the new language in the Patent Act, entertained the plaintiff's claims for patent infringement *based on Everett's advertising activity.* This alone is enough to demonstrate the required causal connection between Everett's advertising activities and the patent infringement claim. In addition, it indicates that the insured could have an objectively reasonable expectation that it could be prosecuted for advertising injury in a claim for patent infringement.

**(i) The prior cases which deny a duty to defend patent infringement claims indicate that the inclusion of the "offer to sell" language in the Patent Act could create the required causal connection between the patent infringement claim and the defendant's advertising.**

Apparently no binding, or even persuasive, case law yet exists that interprets

whether the inclusion of the "offer to sell" language in the Patent Act can create the required causal connection and invoke the duty to defend in a GCL policy.[6] However, close readings of the cases prior to the statutory amendment point strongly to the idea that the inclusion of this language is precisely what would make it possible.

For example, the *Bank of the West* Court reasoned that patent infringement was not an advertising injury for purposes of a GCL policy because:

> [A] claim for patent infringement does not "occur[ ] in the course of ... advertising activities" within the meaning of the policy even though the insured advertises the infringement product, *if the claim of infringement is based on the sale or importation of the product rather than its advertisement.*

*Bank of the West,* 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545 (citations omitted) (emphasis added). In the case at hand, however, by virtue of the amendment to the Patent Act, the claim *is* based, at least in part, on the advertisement of the patented product.

Two years later, the Ninth Circuit applied the *Bank of the West* causal connection requirement in determining whether a claim for patent infringement was covered as "piracy" under the advertising injury provisions of a GCL policy. *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500 (9th Cir. 1994). The *Iolab* Court found that

> Patent infringement cannot constitute an advertising injury because, under 35 U.S.C. § 271, a patent is infringed by making, using or selling a patented invention, *not by advertising it.*

> Had [the insured] merely advertised the [patented invention] but not sold the

---

**6.** Defendant cites *Intelicad Computers, Inc. v. Travelers Property & Casualty,* 97–C–975–K (N.D.Okla. Sept. 29, 1998), for the proposition that the amendment to § 271 does not change the determination that patent infringement claims do not constitute advertis-

ing injury. This case has not been certified for publication, and is currently on appeal before the Tenth Circuit Court of Appeals for the United States. It provides virtually no analysis of the issue, and this Court does not find it terribly helpful.

product, [the patentee] could not have accused [the insured] of infringing his patent. *Since [the insured's] advertising of the [invention] was not an element of the ... claim, [the insured] could not reasonably have expected insurance coverage for its infringement.* *Id.* at 1506 (citations omitted, emphasis added). In the instant case, in contrast, the insured *was* accused of patent infringement by advertisement, and his advertising of the allegedly infringing products *was* an element of the claim.

The Ninth Circuit went on to note that: [T]he California Supreme Court appears to leave open the possibility that in some cases, a patent infringement claim may be "based on ... the advertisement." *Bank of the West* at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545.

*Iolab* at 1507.

The Ninth Circuit adopted this reasoning again in its decision in *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219 (9th Cir.1996) *cert. denied,* 519 U.S. 965, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996). In refusing to recognize a duty to defend in a patent infringement case, the *Simply Fresh* Court noted that the patent infringement claims before it were based on *use* of the patented device alone, not on its advertisement. *Id.* at 1222–23. The Court expounded, "under the policy, the advertising activities must cause the injury—not merely expose it...." *Id.*

In the *Clark* case, however, it was the *advertising itself* that was alleged to have caused injury, at least in part. Thus, these cases indicate that the adoption of the "offer to sell" language in the Patent Act, which may permit claims of patent infringement based on advertising alone, could create the required causal connection permit coverage of patent infringement claims under a GCL policy.[7]

**(ii) The *Clark* Court found that the new "offer to sell" language in the Patent Act made advertising of the patented product a separate act of infringement.**

Prior to the scheduled trial in the *Clark* action, counsel for Everett brought a Motion in Limine seeking, *inter alia,* to preclude Clark from introducing evidence or argument at trial concerning whether Clark could seek to recover corrective advertising damages based on Everett's allegedly infringing advertising. In ruling that evidence on the issue was admissible, the *Clark* Court observed the following:

Article 28, Section 271(a) of the United States Code states, in pertinent part:

Whosoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

In 1996, Congress added the phrase "offers to sell" to the statute *thereby making advertising a patented invention infringement of the patent.*

Order Granting in Part and Denying in Part Defendants' Motion in Limine on Six Issues (emphasis added). The *Clark* Court went on to conclude that corrective advertising damages could be appropriate and recoverable for the patent infringement claim, and so, the Court would not

---

7. Transcontinental argues that the "offer to sell" language could not be construed to cover advertising injury because, under California law, an advertisement is not an "offer to sell," but rather just an "invitation to bargain." Therefore, according to Transcontinental, Plaintiff's advertisements cannot fall under the Patent Act.

However, Transcontinental provides this Court no legal reasoning to support its contention that Congress intended to adopt California's definition of "offer to sell" when it amended the Patent Act. More importantly, the complaint in the *Clark* action uses both the terms "offered to sell" and "advertised," thus putting Transcontinental on notice that Everett's advertising activity could be the basis for claims of infringement.

exclude evidence relevant to the issue. Therefore, under the *Clark* Court's express ruling, Everett could have been held liable at trial for damages for patent infringement solely by virtue of its having advertised infringing products. In light of this, it is difficult to say how Transcontinental could prove the absence of any potential for advertising injury coverage.[8] *See, e.g., Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Based upon the above, the Court concludes that 1) there is clearly a causal connection between Everett's advertising activities and the patent infringement claim; and 2) Plaintiff had an objectively reasonable expectation that the GCL policy would cover patent infringement claims for advertising a patented product. Therefore, the Court holds that the advertising injury provisions in the GCL policy could reasonably be construed to cover claims for patent infringement.[9] Transcontinental thus breached its duty in refusing to defend Everett in the *Clark* action.

### B. *The "First Publication" Exclusion*

#### (1) *Duty to Defend*

The Transcontinental Policy provides, *inter alia,*

> This insurance does not apply to ... 'advertising injury' (2) arising out of oral or written publication of material whose *first publication took place before the beginning of the policy period.*

(Emphasis added). Transcontinental argues that, because Everett first began to advertise a massage table featuring the patented design in 1992 (prior to the beginning of the policy period), this exclusion applies, and Transcontinental therefore had no duty to defend or indemnify.

Transcontinental, however, relies solely upon information it obtained through the course of discovery in this action to support its application of the "first publication" exclusion.[10] Prior to its denial of coverage, Transcontinental had apparently conducted no investigation as to when Everett commenced its advertising activities, and indeed, does not claim to have had any knowledge of the potential applicability of the "first publication" exclusion at the time the defense was tendered.

Transcontinental is conflating the question of whether it owed Everett a duty to defend with the question of whether it owes Everett a duty to indemnify. The California Supreme Court has noted, " '[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer *at the inception of a third party lawsuit* .... Hence, the duty may exist even where coverage is in doubt and ultimately does not develop.' " *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (quoting *Saylin v. California Ins. Guarantee Assn.,* 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986)) (emphasis added).

This Court finds the holding of California's First District Court of Appeal in *CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 605, 222

---

8. Defendant Transcontinental also argues that there could be no duty to defend because the only available remedy for "offer to sell" infringement is an injunction, and the Transcontinental policy unequivocally does not provide coverage for injunctive relief (Transcontinental refers to this as the "as damages" clause of the policy). In light of the *Clark* Court's determination that corrective advertising damages may be recoverable for "offer to sell" infringement, that argument collapses.

9. Because the Court has concluded that the ambiguous language of the misappropriation clause could be construed to cover advertising of patented products, the Court need not reach the issue of whether the policy language regarding "infringement of copyright, title or slogan" could give rise to coverage as well.

10. Transcontinental cites to the deposition testimony of Mr. Payne taken in this action, as well as advertisements produced during the course of discovery.

Cal.Rptr. 276 (1986) instructive in this matter:

> The duty to defend is much broader than the duty to indemnify. An insurer's duty to defend must be analyzed and determined on the basis of any potential liability arising from facts available to the insurer from the complaint or other sources available to it *at the time of the tender of defense.* If the insurer is obliged to take up the defense of its insured, *it must do so as soon as possible,* both to protect the interests of the insured, and to limit its own exposure to loss. Unlike the duty to indemnify, which is only determined after liability is finally established, *the duty to defend must be assessed at the outset of the case.* Thus, we are not dealing with the question of whether the insurers were actually liable to indemnify [the insured] for the wrongs alleged in the [underlying] lawsuit, but rather with *their duty to defend [the insured] against [the] claims as of the time that lawsuit was filed. This distinction is critical.*

*CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d at 605, 222 Cal.Rptr. 276 (citations omitted, emphasis added).

Thus, while the first publication doctrine may apply to the question of whether Transcontinental must indemnify Everett in the patent action, it does not excuse Transcontinental for its failure to defend.

**(2) *Duty to Indemnify***

██ Transcontinental may, of course, rely on information discovered during the course of the present action in determining whether it must *indemnify* Everett in the underlying action. As noted above, Transcontinental points to uncontested testimony and documentary evidence showing that Everett first advertised allegedly infringing massage tables prior to the beginning of the policy period. Thus, Transcontinental contends, it has no duty to indemnify Everett in the underlying patent infringement case.

During the course of its advertising, Everett published many different advertisements in different publications for different models of massage tables. Transcontinental's argument is only meritorious with regard to those particular advertisements which were first published prior to commencement of the policy period. Under the Patent Act, Plaintiff could be charged with patent infringement for *each* infringing "offer to sell." Therefore, each advertisement should be considered separately. Those advertisements which were first published prior to the commencement of the policy period would be excluded from coverage under the policy, while those which were first published after commencement of the policy period may be covered. Precisely which advertisements fall under which category is, of course, a question of fact not appropriate for the Court to decide in this summary judgment motion.

**C. *"Willful Act" Exclusion***

**(1) *Duty to Defend***

██ California Insurance Code § 533 provides in pertinent part: "An insurer is not liable for a loss caused by the willful act of the insured ..." Defendant Transcontinental argues that Everett's patent violation in the *Clark* case was willful, and therefore, Transcontinental has no duty to defend or indemnify. However, at the time Everett tendered the defense of the *Clark* action to Transcontinental, Transcontinental had no knowledge regarding the willfulness of Everett's infringement. Therefore, for the same reasons noted above, Transcontinental is not excused from the duty to defend by California Insurance Code§ 533.

**(2) *Duty to Indemnify***

██ It is true, however, that in accordance with California Insurance Code § 533, Transcontinental cannot be held liable for coverage for actions by Everett that were willful and intentional. *See, e.g.,*

*Aetna Casualty & Surety Co. v. Superior Court,* 19 Cal.App.4th 320, 325, 23 Cal. Rptr.2d 442 (1993). In the underlying action, the *Clark* court held that there was undisputed evidence that Everett's infringement was willful, and granted partial summary judgment to Plaintiff Clark on that issue. *See* Order Granting Plaintiff's Motion for Partial Summary Judgment, July 20, 1998.

■ Transcontinental argues that the doctrine of collateral estoppel precludes Everett from now claiming that its infringement was not willful. Collateral estoppel prevents the re-litigation of issues which were actually litigated and were essential to the judgment in the first action. *Trujillo v. County of Santa Clara,* 775 F.2d 1359 (9th Cir.1985). Because the issue of Everett's willfulness was litigated in the *Clark* action, and was essential to the judgment, Transcontinental argues that this Court should find as a matter of law that Transcontinental had no duty to indemnify.

■ However, Transcontinental fails to "recognize the clear line of authority in this state to the effect that even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.'" *Clemmer v. Hartford Ins., Co.,* 22 Cal.3d 865, 887, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) (citing *Walters v. American Ins. Co.,* 185 Cal.App.2d 776, 783, 8 Cal.Rptr. 665 (1960); *Meyer v. Pacific Employers Ins. Co.,* 233 Cal.App.2d 321, 327, 43 Cal.Rptr. 542 (1965); *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 273–274, n. 12, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) and cases there cited). A "willful act" for purposes of section 533 is an act committed with a preconceived design to injure, an inherently harmful act, or an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to

result. *Id.* It is " 'an act done with malevolence' or with 'malice in fact.'" *Zurich Ins. Co. v. Killer Music, Inc.,* 998 F.2d 674, 678 (9th Cir.1993) (quoting *Capachi v. Glens Falls Ins. Co.,* 30 Cal.Rptr. 323, 215 Cal.App.2d Supp. 843, 849 (1963) and *City Products Corp. v. Globe Indemnity Co.,* 88 Cal.App.3d 31, 36 n. 3, 151 Cal.Rptr. 494 (1979)). It " 'appears to be something more than the intentional violation of a statute.'" *Id.* (quoting *B & E Convalescent Center v. State Compensation Ins. Fund,* 8 Cal.App.4th 78, 94, 9 Cal.Rptr.2d 894 (1992)).

In contrast, the standard for "willful" patent infringement is much lower. The *Clark* court noted that " '[t]he test [for establishing willful infringement] is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed.'" Order Granting Plaintiff's Motion for Partial Summary Judgment (brackets in original) (citing *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418 (Fed.Cir.1988)).

■ The *Clark* Court based its finding of willful infringement on the fact that, after Everett received notice of the existence of Clark's patent, Everett failed to seek advice of legal counsel regarding potential infringement. The Federal Circuit has noted that the duty to seek advice of counsel is an affirmative duty placed upon a potential infringer once he or she has actual notice of the existing patent. *Avia Group Intern., Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1566 (Fed.Cir. 1988). Thus, mere negligence or recklessness in failing to seek advice of counsel could constitute a finding of "willful" patent infringement; however, this would not meet the standard for "willful" conduct under § 533. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 740, 15 Cal.Rptr.2d 815 (1993).

Everett's failure to exercise his affirmative duty under the Patent Act does not necessarily constitute a "willful" act under

Insurance Code § 533. They are entirely different standards. Moreover, the *Clark* Court's ruling of willful infringement applied to some, but not all of the massage tables that were accused of infringement. Therefore, this Court cannot find . as a matter of law that Transcontinental had no duty to indemnify Plaintiffs in the *Clark* action under California Insurance Code § 533.[11]

### D. *"Purely Legal" Question*

■ Transcontinental argues that it had no duty to defend, since the question of coverage involved a purely legal issue of interpreting the amendment to the Patent Act, 35 U.S.C. § 271(a), redefining "infringement" to include "offers to sell." According to Transcontinental, if the question of coverage hinges on a purely legal question, the insurer is excused from the duty to defend, "unless and until" a court rules that the duty exists. However, Transcontinental mischaracterizes the case law in this area. In reality, the cases hold that "a potential for coverage cannot be based on an unresolved legal dispute concerning policy interpretation *which is ultimately resolved in favor of the insurer."* *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group,* 50 Cal.App.4th 548, 556, 59 Cal.Rptr.2d 36 (1996) (citing *A–Mark Financial Corp. v. CIGNA Property & Casualty Cos.,* 34 Cal.App.4th 1179, 1192, 40 Cal.Rptr.2d 808 (1995)). In other words, if the Court finds, based on a formerly unresolved legal issue, that no coverage exists under the policy, the insured cannot argue that a duty to defend is nevertheless owed.

This is not the case here. This Court has found that, under the amendment to the Patent Act, the potential for coverage *does* exist under the policy. Therefore,

Transcontinental is not excused from the duty to defend.

### E. *Conclusion as to Duties to Defend and Indemnify*

#### (1) *Duty to Indemnify*

Based upon the above, there are genuine issues of material fact as to whether Transcontinental breached its duty to indemnify Everett in the underlying *Clark* action. Therefore the Court will not grant Transcontinental's motion for summary judgment on that issue.

#### (2) *Duty to Defend*

This Court does find as a matter of law that Transcontinental breached its duty to defend Everett. In anticipation of this finding, Everett has moved this Court for damages, including attorneys' fees, costs, and prejudgment interest incurred in defense of the *Clark* action. In response, Transcontinental has requested that this Court either deny or continue Everett's counter motion for summary adjudication on the issue of the amount of damages, as premature.

#### (a) *Rule 56(f) of the Federal Rules of Civil Procedure*

Under Rule 56(f) of the Federal Rules of Civil Procedure, if it appears that a party opposing a summary judgment motion cannot present facts essential to the opposition of such motion, the Court may deny the motion or order a continuance. "[D]enial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes a) a timely application which b) specifically identifies c) relevant information, d) where there is some basis for believing that the information sought actually exists. Summary denial is especially inappropriate where the materi-

---

**11.** Transcontinental's citation to *Aetna Casualty & Surety Co. v. Superior Court,* 19 Cal. App.4th 320, 23 Cal.Rptr.2d 442 (1993), for the proposition that Insurance Code § 533 precludes coverage for "willful" patent infringement, is inapposite. *Aetna* involved allegations of *inducing* patent infringement, not for direct infringement itself. To be liable for patent inducement, a party must have *specific intent* to induce another to infringe. *Id.* at 330, 23 Cal.Rptr.2d 442. That is not the case for a finding of willful direct infringement.

al sought is also the subject of outstanding discovery requests." *VISA Intern. Service v. Bankcard Holders,* 784 F.2d 1472, 1475 (9th Cir.1986).

Transcontinental has made an adequate showing that discovery disputes regarding documents relevant to this issue hampered its efforts to ascertain the reasonableness of Everett's damages claims. This Court will therefore deny this portion of Plaintiffs' motion. Plaintiffs have leave to refile this motion, once all outstanding discovery disputes regarding this issue are resolved.

**F. *Plaintiffs' Claims for Breach of Contract. Bad Faith, Negligence, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress***

Transcontinental points out that, if there is no duty to defend and no potential for indemnity, Plaintiffs cannot maintain claims for breach of contract, bad faith, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. However, this Court has held that Transcontinental did have a duty to defend. Therefore, these claims will stand.

**V. *CONCLUSION***

In accordance with the above, the Court ORDERS the following:

1) Defendant Transcontinental's Motion for Summary Judgment for the Court to declare as a matter of law that Transcontinental did not owe Everett a duty to defend or indemnify in the underlying action of *Clark v. Living Earth Crafts* under Transcontinental policy No. 56819374 is hereby DENIED;

2) Plaintiffs' Motion for Summary Adjudication of Transcontinental's duty to defend and breach of duty to defend is GRANTED insofar as the Court finds that Transcontinental did have a duty to defend and did breach that duty;

3) Plaintiffs' Motion for Summary Adjudication of Transcontinental's duty to defend

and breach of duty to defend is DENIED AT THIS TIME as to amount of damages, including attorney's fees, costs of defense, and prejudgment interest claimed; however, Plaintiffs have leave to refile this motion following resolution of discovery disputes regarding this issue;

4) A status conference is scheduled in this case for JULY 9, 1999, at 10:00 A.M., in COURTROOM 1. Parties are to file a JOINT status conference statement with the Court ten days prior to that date.

IT IS SO ORDERED.