**U.S.A. NUTRASOURCE, INC., et al., Plaintiff(s),**

v.

**CNA INSURANCE COMPANY, et al., Defendant(s).**

**No. C–00–4536 PJH.**

United States District Court, N.D. California.

Feb. 5, 2001.

Randy M. Hess, Michelle L. Fogliani, Duane W. Shewaga, Patric J. Kelly, Adelson, Hess & Kelly, Campbell, CA, for Plaintiffs.

Douglas R. Irvine, Gordon J. Calhoun, Jamie L. Vels, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, CA, for Defendants.

## MEMORANDUM AND ORDER

HAMILTON, District Judge.

Now before the court are the motions of defendant Columbia Casualty Company ("CCC") to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(4) and (5), to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), and to strike. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

The present case stems from an insurance dispute. Plaintiffs are U.S.A. Nutra-

source, Inc. ("Nutrasource"), Herbsmart, Natural Sourcing Solutions, Inc., and Larry W. Martinez. Defendants are CCC and CNA Insurance Company ("CNA").

According to the complaint, the facts are generally as follows. Plaintiffs purchased a commercial general liability insurance policy from defendants for the period of March 1, 1999, through March 1, 2000. Said policy included liability coverage for claims arising from alleged advertising injuries, including trademark infringement, copyright infringement, misappropriation of style of doing business, etc.

On or about June 15, 1999, Amrion, Inc. ("Amrion") filed a complaint for trademark infringement, copyright infringement, and misappropriation of style of doing business, among other claims, in the United States District Court for the Northern District of California. Immediately thereafter, plaintiffs provided defendants a copy of the complaint filed in the *Amrion* action, as well as other extrinsic facts regarding the claim, and requested that defendants provide them with a defense and indemnification under the terms of their insurance policy.

On September 27, 1999, defendants advised plaintiffs that there was no potential coverage under the insurance policy. Accordingly, defendants refused to provide a defense or indemnity for plaintiffs with regard to the *Amrion* action. Thereafter, plaintiffs retained the law firm of Ropers, Majeski to represent their interests.

However, on February 8, 2000, defendants sent a letter to plaintiffs in which defendants changed their position, accepting their duty to defend and agreeing to pay Ropers, Majeski's prior fees and future fees in connection with the defense of the action.

Notwithstanding the representations made in the February 8, 2000, letter, defendants never paid for plaintiffs' defense costs and failed to actively participate in settlement negotiations for the case. Plaintiffs did, however, ultimately settle the case, sometime in October of 2000.

Around the same time that the *Amrion* action settled, plaintiffs filed the present action against defendants in state court, alleging (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) coverage by estoppel; (4) fraud; (5) negligent misrepresentation; and (6) declaratory relief. Thereafter, defendants removed the action to this court.

CCC now moves to dismiss the action and to strike plaintiffs claims for punitive damages. CCC also now moves to dismiss the action against CNA.

## DISCUSSION

I. Motion to Dismiss Pursuant to Rules 12(b)(4) and 12(b)(5)

A. Legal Standard

· Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) ("Rules 12(b)(4) and 12(b)(5)") permit a defendant to challenge the form of summons and the method of service attempted by plaintiff, respectively.

B. CCC's Motion to Dismiss CNA Pursuant to Rules 12(b)(4) and 12(b)(5)

■ CCC contends that CNA is not a corporation, but rather is a federally registered service mark/tradename used for business and promotional purposes by CCC and other insuring entities. Accordingly, because plaintiffs' summons designated CNA as a corporate entity rather than a tradename, it is defective and dismissal is warranted.

■ Dismissals for defects in the form of summons are generally disfavored. Such defects are considered "technical" and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice. *See Chan v. Society Expedi-*

*tions, Inc.,* 39 F.3d 1398, 1404 (9th Cir. 1994).

In the present case, plaintiffs' error is a mere technical error for which defendants suffered no prejudice. Moreover, plaintiffs concede CNA's legal status and request leave to amend their complaint to substitute CNA as a "dba."

Based on the foregoing, the court DENIES CCC's motion to dismiss CNA. Plaintiffs shall, however, amend their complaint to substitute CNA as a "dba."

## II. Motion to Dismiss Pursuant to Rule 12(b)(6)

### A. Legal Standard

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the motion should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See id.* In other words, a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") dismissal is proper only where there is either "a lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

In resolving a motion to dismiss for failure to state a claim, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–338 (9th Cir.1996).

The Court may consider documents outside of the pleadings in support of a Rule 12(b)(6) motion to dismiss where the document is referenced in the plaintiff's complaint and the document is "central" to the plaintiff's claim. *See Venture Associates Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (9th Cir.1993). The Court may also take judicial notice of facts in records outside the pleadings. *See MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) (taking judicial notice of public records); *Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986).

### B. CCC's Motion to Dismiss Pursuant to Rule 12(b)(6)

CCC contends that plaintiffs' complaint should be dismissed because it fails to state a claim. With regard to plaintiffs' contract claims, CCC argues that there was no potential for coverage with regard to the claims at issue in the *Amrion* action. With regard to plaintiffs' causes of action for estoppel, fraud, and negligent misrepresentation, CCC argues that because plaintiffs retained their own counsel both before and after the February 8, 2000, letter, and because defendants expressly reserved their rights to deny indemnification, plaintiffs cannot establish that they reasonably relied on CCC's representation. Additionally, with regard to the fraud and negligent misrepresentation claim, CCC argues that plaintiffs fail to allege said claims with sufficient particularity. Finally, with regard to plaintiffs' claim for declaratory relief, CCC argues that declaratory relief is inappropriate in this case because, as plaintiffs' own complaint shows, plaintiffs have alternative legal remedies,

#### 1. First and Second Causes of Action for Breach of Contract and Breach of the Implied Covenant

As stated above, plaintiffs allege that defendants breached the subject insurance policy by not providing a defense and by

refusing to contribute to or pay for any settlement of the *Amrion* action.

An Insurer's duty to defend is determined based on its potential liability as derived from the facts contained in the complaint and/or other sources available to the Insurer at the time the defense is tendered. *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 453 (9th Cir.1988). While mere speculation that the plaintiff in the underlying action will amend his or her complaint to allege new facts does not create a duty to defend, *see Olympic Club*, 991 F.2d at 503, where the facts alleged in the complaint or known to the insurer would support another claim or remedy, albeit not pleaded, the duty to defend attaches. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (holding that duty to defend existed where facts alleged would support a claim for negligence, even though complaint only alleged a claim for an intentional injury); *see also Everett Assoc., Inc. v. Transcontinental Ins. Co.*, 57 F.Supp.2d 874, 884, n. 8 (N.D.Cal.1999) (holding that duty to defend existed where damages were available for patent infringement claim, despite the fact that complaint alleged only a request for injunctive relief).

In the present case, the plaintiffs in the underlying *Amrion* action initially sought only injunctive and other types of non-damage relief, e.g., attorneys' fees and costs. *See Cutler–Orosi Unified School Dist. v. Tulare County School Districts Liability/Property Self–Insurance–Authority*, 31 Cal.App.4th 617, 632–33, 37 Cal.Rptr.2d 106 (1994) (holding that attorneys' fees are inconsistent with the concept of damages as the term is used in its ordinary and popular sense, that is, compensation paid to a party for the loss or detriment suffered because of the wrongful act of another). Notwithstanding, because at least one of the claims in the *Amrion* action supported an award for damages, *see Bank of the West v. The Superior Court of Contra Costa County (Industrial Indemnity Co.)*, 2 Cal.4th 1254, 1265–66, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (holding that damages are available for common law unfair competition), plaintiffs allege sufficient facts to state a claim for breach of the duty to defend based on defendants' alleged initial refusal to defend the *Amrion* action.

Additionally, plaintiffs allege that while defendants thereafter agreed to defend the action, they failed to actively participate in the defense of the action, including settlement negotiations, and refused to pay plaintiffs' outside attorneys' fees. Based on these allegations, plaintiffs also state a claim for breach of the duty to defend.

While defendants argue that their assumption of the defense of the *Amrion* case would have constituted a violation of California Insurance Code section 533 and other similar sections based on the allegations of intentional and willful conduct alleged in the *Amrion* case, said argument is without merit. At the time that plaintiffs tendered the *Amrion* case to them, defendants had no actual knowledge regarding the alleged willfulness of plaintiffs' infringement. *See Everett Assoc.*, 57 F.Supp.2d at 885.

Finally, with regard to defendants' alleged breach of the duty to indemnify plaintiff for the costs incurred in connection with the actual settlement of the *Amrion* action, it is unclear whether plaintiffs allege sufficient facts to state a claim. According to the terms of the policy, defendants had a duty only to pay damages incurred in connection with a third-party's claim for advertising injury. As stated above, according to the complaint in the *Amrion* action, the *Amrion* plaintiffs did not seek damages in their complaint

against Nutrasource. While said fact does not foreclose the possibility that any money paid in connection with the settlement was for damages, plaintiffs do not allege that any money was paid in exchange for the subject settlement or that such money was to settle claims for damages by the *Amrion* plaintiffs. As a result, dismissal, with leave to amend, is warranted.

■ With regard to defendants' contention that indemnification of any damages incurred as a result of the *Amrion* case would have constituted a violation of California Insurance Code section 533, there was no finding of willful conduct because the case settled. Moreover, even if there was a finding of willful conduct, a finding of "willful" pursuant to federal and state trademark law does not, in all circumstance, constitute a finding of "willful" under insurance Code section 533. *See Everett Assoc.*, 57 F.Supp.2d at 886–87.

2. Estoppel, Fraud, and Negligent Misrepresentation

Plaintiffs also allege that should the trier of fact find that defendants did not have a contractual duty to defend, defendants should be estopped from denying their duty to defend in light of their misrepresentations that they would assume the defense and/or that they would pay plaintiffs' accrued and future attorneys' fees in connection with the defense of the case.

As stated above, defendants contend that plaintiffs fail to state a claim for estoppel, fraud, and negligent misrepresentation because they cannot establish that they reasonably relied on defendants' statement that they would assume the defense of the action in light of defendants' statement that they were accepting the defense under reservation of their rights.

■ In order to state a claim for estoppel, fraud, and negligent misrepresentation, a plaintiff must allege that he or she reasonably relied on a defendant's representation.

■ In the present case, plaintiffs allege that but for defendants' representation that they would assume the defense in this case, plaintiffs would have settled the case much sooner, because they could not afford to defend themselves, and would not have accrued the amount of attorneys' fees that they did. Said allegations are sufficient to satisfy the reasonable reliance element of plaintiff's claims for estoppel, fraud, and negligent misrepresentation.

■ With regard to defendants' arguments that plaintiffs do not allege their claims for fraud and negligent misrepresentation with sufficient particularity, while it is true that plaintiffs omit at least one relevant fact, i.e., to whom the representation was made, said failure does not merit the dismissal of plaintiffs' claims for fraud and negligent misrepresentation. Defendants clearly possess said information as the February 8, 2000, letter, upon which plaintiffs' claims for fraud and negligent misrepresentation are based, is attached to defendants' documents filed in connection with their motion to dismiss. As stated above, the Court may consider documents outside of the pleadings in support of a Rule 12(b)(6) motion to dismiss where the document is referenced in the plaintiff's complaint and the document is "central" to the plaintiff's claim. *See Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

3. Declaratory Relief

With regard to defendants' argument that plaintiffs' claim for declaratory relief is inappropriate because plaintiffs have legal remedy, a plaintiff may plead inconsistent theories of relief, e.g., a claim for both breach of contract and quantum meruit. *See* Fed.R.Civ.P. 8(e)(2), based on the same set of facts.

Based on the foregoing, the court GRANTS CCC's motion to dismiss pursuant to 12(b)(6) as to plaintiffs' contract claims stemming from the alleged breach of the duty to indemnify WITH LEAVE TO AMEND. The court DENIES CCC's motion to dismiss as to all other raised grounds.

### III. Motion to Strike

#### A. Legal Standard

A motion to strike, brought pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (hereinafter "Rule 12(f)"), challenges any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f).

#### B. CCC's Motion to Strike

Defendants contend that plaintiffs' claims for punitive damages should be stricken based on plaintiffs' failure to allege sufficient facts showing fraud or malice. Said contention is without merit. As stated above, plaintiffs have alleged sufficient facts to state a claim for fraud, as well as a claim for the bad-faith denial of plaintiffs' defense in the *Amrion* action.

Accordingly, the court DENIES CCC's motion to strike plaintiffs' claim for punitive damages.

### CONCLUSION

In conclusion, the court rules as follows:

(1) CCC'S motion to dismiss pursuant to Rules 12(b)(4) and 12(b)(5) is DENIED.

(2) Plaintiffs' request for leave to amend their complaint to designate CNA as a "dba" is GRANTED.

(3) CCC's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED WITH LEAVE TO AMEND as to plaintiffs' contract claims arising out of defendants' alleged breach of their duty to indemnify.

(4) CCC's motion to dismiss pursuant to Rule 12(b)(6) is DENIED on all other grounds.

(5) CCC's motion to strike is DENIED.

(6) Plaintiffs shall file its amended complaint no later than thirty (30) days from the date of this order.

The hearing on the motion, previously set for Wednesday, February 7, 2001, is hereby VACATED. *See* Civil Local Rule 7–1(b).

This order fully adjudicates the motions listed at numbers 5, 6, 11, and 14 on the clerk's docket for this case.

**IT IS SO ORDERED.**